FILED

2016 Jan-29  PM 05:46
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| HOPE M. CARR, DWIGHT BRYANT, | ) | |
| JR., ALLEN S. MOBLEY, JR., MARK | ) | |
| W. CLARK, JR., AND PAUL LOY, | ) | |
| on behalf of themself and other persons | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 5:15-cv-00356-AKK |
| | ) | |
| AUTOZONERS, LLC; AND | ) | |
| AUTOZONE STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' BRIEF IN SUPPORT OF CONDITIONAL
CERTIFICATION AND COURT AUTHORIZED NOTICE**

# TABLE OF CONTENTS

I.     INTRODUCTION...........................................................................................1

II.    FACTUAL ALLEGATIONS.....................................................................3

       A.     AutoZone Treats All Store Managers As Similarly
              Situated On A Nationwide Basis.................................................3

              1.     The Store Manager Position........................................3

              2.     Company-Wide Communications.................................4

              3.     Store Managers and All AutoZoners Are Controlled
                     By Extensive Corporate-Wide Policies ...................5

       B.     AutoZone Store Managers Have Similar Job Duties and Perform
              Similar Functions on a Daily Basis..........................................8

III.   ARGUMENT..............................................................................................10

       A.     Plaintiffs Have Met All Requirements For Conditional
              Certification and Notice Under §216(b) Of The FLSA.........10

              1.     The *Taylor Litigation* ............................................10

              2.     The Facts of This Case, Which Are Identical To *Taylor*,
                     Warrant Conditional Certification............................13

                     a.     It Is Undisputed That Other Store Managers
                            Desire To "Opt-In" To This Case...................16

                     b.     AutoZone Treats All Store Managers Similarly As
                            Exempt Employees Not Entitled To Overtime.............18

                     c.     Store Managers Have Similar Job Duties And Pay.....................20

       B.     Court's Authority To Grant Conditional Certification
              And Issue Notice....................................................................22

       C.     Form and Method of Notice....................................................25

D.      Notice Must Be Expedited Due To The Running Of The Statute
        Of Limitations..........................................................................................................27

Conclusion..........................................................................................................................27

Certificate of Service..........................................................................................................29

Plaintiffs in the above-styled matter move the Court to conditionally certify this case as a collective action and to facilitate court-ordered notice to putative opt-in claimants pursuant to §216(b) of the Fair Labor Standards Act (FLSA).

## I.  INTRODUCTION

On February 27, 2015, Hope Carr, Dwight Bryant, Jr., Allen S. Mobley, Jr., Mark W. Clark, Jr., and Paul Loy ("Named Plaintiffs") filed the instant action on behalf of themselves and all similarly situated Store Managers[1] against AutoZone for violations of the Fair Labor Standards Act ("FLSA"). (Doc. 1).  Since the initial filing of this case in February of 2015, 53 individuals filed consents to join this action as opt-in Plaintiffs. ("Opt-In Plaintiffs"). (*See e.g.*, Docs. 9, 11,17, 18, 24, 29, 30, 32, 37).   Between the Named Plaintiffs and Opt-In Plaintiffs (collectively known as "Plaintiffs"), currently 58   individuals from 24 different states are currently participating in this action.  These Plaintiffs worked in and represent the following states:   Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Illinois, Indiana, Kentucky, Massachusetts, Mississippi, Michigan, New Jersey, New York, North Carolina, Nevada, Ohio, Oklahoma,  Pennsylvania, Tennessee, Texas, Virginia, Washington, and Wisconsin.  (*Id.*).

Plaintiffs and those that they seek to represent  are all current or former AutoZone Store Managers who seek unpaid overtime compensation from AutoZone for hours they worked in excess of 40 hours per week and for which they were not paid overtime compensation for any of those excess hours in violation of the FLSA.  Plaintiffs contend that they were misclassified by the defendant as

---

[1]Plaintiffs are seeking nationwide certification for all AutoZone Store Managers, except for those employed in California and Puerto Rico where all Store Managers are paid on an hourly basis.  For purposes of this motion and brief, any references to Store Managers in these pleadings are defined as all Store Managers except those employed in California and/or Puerto Rico.

1

exempt employees and therefore, were not paid overtime wages as required by law.  Plaintiffs seek to conditionally certify a nationwide class of individuals (excluding those Store Managers employed in California and Puerto Rico) employed as AutoZone Store Managers from February 27, 2012, to the present.  Plaintiffs also seek to conditionally certify a nationwide class of individuals who were employed as Store Managers from July 16, 2008 to February 27, 2012, who filed opt-in consents in the case of *Michael L. Taylor v. AutoZone, Inc.*, Case No.: 3:10-cv-08125-FJM, in the United States District Court for the District of Arizona and whose claims were tolled and are timely pursuant to the tolling order agreed to by the parties and entered by  the *Taylor* court.  *See Taylor v. AutoZone, Inc.* Case No.:3:10-cv-08125-FJM (D. Ariz., Jan. 21, 2015)(Doc. 362)(Attached as PX 1).

Many of the current Plaintiffs were opt-in Plaintiffs in the *Taylor* case referenced above.  The *Taylor* case maintained the same basic allegations as the instant case.  That case was conditionally certified as a collective action by the Arizona District Court upon finding that the requisite level of similarity was met. *See* PX 2 - Conditional Certification Orders.  Additionally, the Ninth Circuit Court of Appeals reversed the District Court's grant of summary judgment, finding that the claims of the *Taylor* plaintiffs were improperly dismissed on summary judgment and that disputed issues of material fact required that the claims by tried by a jury. PX 3 - *Taylor v. AutoZone, Inc.,* 572 Fed.Appx. 515 (9th Cir. 2014).  The *Taylor* case was only decertified immediately prior to the beginning of trial based upon a stipulation of the parties and a notice of settlement of the named plaintiffs' claims.  PX 1 *Taylor* Doc. 362.

2

## II.  FACTUAL ALLEGATIONS

**A.    AutoZone Treats All Store Managers As Similarly Situated On A Nationwide Basis.**

    **1.    The Store Manager Position**

AutoZone classifies all Store Managers as exempt, regardless of store size, location, volume or any other factor.  Pl. Complaint ¶ 17, 25, 33; See also Defendant's Answer p. 10 (First Defense); PX 29 Def. Resp. to RFA p. 3-4 #1, 3.  Store Managers are the only employees at the store level who are paid a salary instead of an hourly rate.  PX 4 - Tim Young Dec. ¶ 11.[2] All Store Managers (outside of California and Puerto Rico) were paid on a salary basis.  PX 29 Def. Resp. to RFA p.3 #1. All AutoZone Store Managers (outside of California) report to a District Manager, who reports to a Regional Manager.  PX 4  ¶ 3.  All District Managers are responsible for providing oversight and direction to the stores and Store Managers in their District. PX 4 ¶ 3; PX 5  ¶ 6[3], PX 7 ¶ 12-22, PX 8 ¶ 12-17, PX 9 ¶ 12-17, PX 10 ¶ 12-17, PX 11 ¶ 12-17, PX 12 ¶ 12-17. See also Ex. 13-27.[4]  Each Regional Manager is likewise responsible for the Region as a whole, "including all of the stores in the region."  Sandoval Declaration ¶ 5.

All AutoZone stores employ only one Store Manager.   Young Dec. ¶ 4.   AutoZone has

---

    [2]Tim Young's, Defendant's Director of Field Human Resources, Declaration was filed by AutoZone in the *Taylor* litigation and is attached as Ex. 4.

    [3]Samuel Sandoval's, Defendant's Regional Manager, Declaration was filed by AutoZone in the *Taylor* litigation and is attached as Ex. 5.

    [4]The following declarations are attached hereto: Mobley (AL, TN)(PX 7), Bryant (AL) (PX 8), Aldape (OK, TX)(PX 9), Christopher (GA)(PX 10), Davis (GA, FL)(PX 11), Moore (IL)(PX 12), Loveday (FL, GA)(PX 13), Bluestein (GA)(PX 14), Carr (AL)(PX 15), Loy (AL)(PX 16), Clark (AL)(PX 17), Cottrell (AL)(PX 18), Cummings (IL)(PX 19), Elateek (IL)(PX 20), Ikerd (MS)(PX 21) Jozwiak (MI)(PX 22), Manginelli (NY)(PX 23), McClarin (NC)(PX 24), Rosales (TX)(PX 25), Autrey (FL)(PX 26), and Alvarado (AZ)(PX. 27).

prepared one job description for the Store Manager position which established the responsibilities and duties that all Store Managers are expected to perform.  Pl. Complaint ¶ 32, *admitted by* Defendant in Answer.[5] (Doc. 6, ¶ 32)(Ex. 28); PX 29Def. Resp. to RFA p. 4 #5.  Defendant's policies, procedures, training manuals, and operations manuals are uniform and company-wide.  Pl. Complaint ¶ 31 *admitted by* Defendant in Answer (Doc. 6, ¶ 31).  They apply to all Store Managers regardless of the store.[6] *Id; See also* PX 29 Resp. to RFA p.5 # 6.  Store Managers receive the same training for the Store Manager position throughout the company.  PX 5 ¶¶12-13.

### 2.    Company-Wide Communications

AutoZone has a computer system that connects all stores to headquarters in "real time," so that Plaintiffs' supervisors and other management employees at AutoZone can monitor sales and other activities at the store as they occur.  Pl. Complaint ¶ 29, *admitted by* Defendant in Answer (Doc. 6, ¶ 29).  Moreover, District Managers stay in constant contact with Store Managers through multiple calls per week and multiple store visits during a short period of time.[7]  PX 6 Lozada Dec. ¶ 15[8]; PX 7 ¶¶ 14-15, 20. During these daily contacts, District Managers provide specific instructions about

---

[5] PX 4 ¶ 6; PX 5 ¶ 9; PX 7 ¶ 7, 9, 18; PX 8 ¶ 7, 9; PX 9 ¶ 7, 9; PX 10 ¶ 7, 9; PX 11 ¶ 7, 9; PX 12 ¶ 7, 9. See also PX 13-27.

[6] PX 7 ¶ 8, 18; PX 8 ¶ 8-9; PX 9 ¶ 8-9; PX 10 ¶ 8-9; PX 11 ¶ 8-9; PX 12 ¶ 8-9. See also PX 13-27.

[7] PX 8 ¶ 8, 14-15; PX 9 ¶ 8, 14-15; PX 10 ¶ 8, 14-15; PX 11 ¶ 8, 14-15; PX 12 ¶ 8, 14-15. See also PX 13-27.

[8] Lozada was a District Manager in Arizona, while Mobley was a District Manager in Alabama and Tennessee.  Their similar testimony on District Manager involvement in Store Operations shows the uniform level of similarity on a nationwide basis.

store operations, such as what tasks to perform, how to perform them, and how to prioritize tasks.[9] District Managers provide Store Managers with "to-do" lists which are merely passed along to other store employees for implementation by all store employees.  *Id.*  This practice of heavy District Manager involvement is consistent throughout the country.  *Id.*

AutoZone provides an extensive communications program for all AutoZoners to allow them to function as "an effective team."  PX 30 - Store Handbook p.7.  For example, AutoZoners have access to "Daily Online Communications" (DOC),  the company intranet which they can view from any monitor in the store.  *Id.*  The DOC provides AutoZoners the ability to review items such as store signs, planograms, policies and procedures, weekly management action plan (MAP) and task details, and training.  *Id.*  Through the DOC AutoZoners can access the AutoZone Policy Center, which is an online policy and procedure library where AutoZoners can read approved policies, processes and procedures, take tests, and report noncompliance with policies.  *Id.*   Other company-wide communications programs include the "Shop Talk Board," "*Tune-In,*" and "AZPeople."  *Id.* Moreover, AutoZone maintains all personnel records at a centralized location in AutoZone's Store Support Center.  PX 30 p. 55.

### 3.    Store Managers and All AutoZoners Are Controlled By Extensive Corporate-Wide Policies

AutoZone has a strong corporate culture, which it touts as one of the "constant, core foundations" of its success.  PX 30 p. 3.  The company provides a detailed seventy-plus page Store Handbook which its "AutoZoners" are expected to read and abide by the policies and Code of

---

[9]PX 7 ¶ 8, 15, 18; PX 8 ¶ 8, 15; PX 9 ¶ 8, 15; PX 10 ¶ 8, 15; PX 11 ¶ 8, 15; PX 12 ¶ 8, 15. See also PX 13-27.

5

Conduct  contained therein.[10]   PX 30 at p.1.  AutoZone's Board of Directors adopted the Code of

Conduct and it applies to all AutoZoners with no exception, no matter where they are located.  PX

30 pp. 57-61. Noncompliance with these policies subjects an AutoZoner to corrective action up to and

including termination.  *Id.*

AutoZone's strong culture manifests itself in various corporate programs that are utilized

throughout the company.  PX 30 p. 5.  The "Strive for 5" action plan involves five tools that

AutoZoner's use to govern customer service at all stores.  PX 30 p. 5.  These tools include the "Drop-

Stop 30/30," "GOTTCHA," "WITTDTJR," "Go the Extra Mile," and "WOW! Customer Service"

programs.  *Id.*   These programs require AutoZoners, including managers, to perform certain tasks

such as dropping whatever is in their hands and stopping whatever they are doing to greet customers

before they have either walked 30 feet into the store or before they have been in the store for 30

seconds.  *Id.*  Another requirement of these programs is to provide services such as testing batteries

and installing wiper blades to build customer loyalty.  *Id.*  AutoZone provides awards to AutoZoners

to recognize employees who excel in these programs.  *Id.*

AutoZone Store Managers have virtually no control over important discretionary matters at

the store.  Instead, throughout the company, District Managers, higher management, or human

resources officials control all of these important matters.[11]    In this regard, the District Manager or

someone above has direct control over the stores' payroll budget, hiring procedures, employee

benefits, scheduling, banking procedures, salary determinations, hiring decisions, termination

---

[10]AutoZone employees are referred to as "AutoZoners."  PX 30 p. 2.

[11]PX 7 ¶ 5, 6, 10-22; PX 8 ¶5, 6, 10-17; PX 9 ¶ 5, 6, 10-17; PX 10 ¶ 5, 6, 10-17; PX 11 ¶
5, 6, 10-17; PX 12 ¶ 5, 6, 10-17. See also 13-27.

decisions, promotion decisions, merchandise ordering procedures, merchandise selection, merchandise location, maintenance, overtime, and store hours.[12] AutoZone Store Managers participate in the hiring process by following a highly structured hiring process set out in great detail by the company. PX 31 Hiring Policy pp. 1-22. All hires are required to complete the company-wide electronic hiring (eHire) process. *Id.* All store-level hiring and firing decisions are controlled by the District Managers and Human Resources.[13] In that regard, AutoZone's detailed hiring policy provides a step-by-step process which is to be followed to "place quality AutoZoners in [the] stores as quickly as possible and in a cost-effective way," and Store Managers to follow a pre-existing uniform interview guide. PX 31 pp. 3-18. AutoZone also has similarly detailed policies controlling the Store Manager's involvement in discipline. PX 32 - CAR Policy. The CAR policy states that it provides step-by-step guidance to ensure that the CAR process is uniform throughout the company. PX 32 pp. 4-6.

AutoZone has implemented a program in its stores that tracks labor hours and generates a standard schedule for each store. PX 6 ¶ 10. AutoZone dictates scheduling for stores through the limited payroll budgets set by District Managers or corporate.[14] AutoZone also has a program where stores that do not make their sales forecast have payroll hours subtracted from the store's monthly

---

[12] PX 7 ¶ 12-22; PX 8 ¶ 12-17; PX 9 ¶ 12-17; PX 10 ¶ 12-17; PX 11 ¶ 12-17; PX 12 ¶ 12-17. See also 13-27.

[13] PX 7 ¶ 12-22; PX 8 ¶ 12,17; PX 9 ¶ 12,17; PX 10 ¶ 12,17; PX 11 ¶ 12, 17; PX 12 ¶ 12,17. See also 13-27.

[14] PX 7 ¶ 16; PX 8 ¶ 16; PX 9 Aldape Dec. ¶ 16; PX 10 Christopher Dec. ¶ 16; PX 11 ¶ 16; PX 12 ¶ 6, 16. See also PX 14 ¶ 16; PX 13-27.

payroll on a graduated scale based on how many "100's" of dollars the store was off forecast.[15] District Managers routinely order Store Managers to send hourly employees home to save payroll. *Id.* Both the limited payroll budgets and the schedule reductions have a detrimental effect on all Store Managers because they limit the availability of hourly employees to work in the store, requiring Store Managers to fill the gaps for those hours and perform these hourly employees' jobs.[16] Store Managers throughout the country are without any discretion to control these important matters at the store level.

> **B.    AutoZone Store Managers Have Similar Job Duties and Perform Similar Functions on a Daily Basis.**

Not only does AutoZone treat all Store Managers in a similar manner from the top - down, Store Managers perform the same job duties and carry out the same activities throughout the country regardless of location.   Most notably, all Plaintiffs and Declarants testify that they spend an overwhelming majority of their time, some 80-90%, performing non-managerial duties.[17]  These non-managerial duties include the following:

> *Customer Service
> *Opening/Closing the Store;
> *Enter data in computer for product shipments;
> *Stocking;
> *Arranging company-mandated Plan-o-grams;
> *Cleaning the Store;
> *Cashiering;
> *Inventory;
> *Sales;
> *Removing or installing parts for customers;

---

[15]PX 7 ¶ 16; PX 8 ¶ 16; PX 14 Dec. ¶ 6, 16;  PX 12 ¶ 16.

[16]PX 7 ¶ 16; PX 8 ¶  16; PX 9 ¶ 16; PX 10  ¶ 16; PX 11  ¶ 16; PX 12 ¶ 6, 16; PX 14 ¶ 16. See also PX 13-27.

[17]PX 7 ¶ 5, 10; PX 8 ¶ 5, 10; PX 9 ¶ 5, 10; PX 10 ¶ 5, 10; PX 11 ¶ 5, 10; PX 12 ¶ 5, 10. See also PX 13-27.

\*Routine clerical duties;
\*Receiving and unloading freight;
\*Arranging company approved displays;
\*Preventing shrink;

*Id.* These non-managerial job duties are the same as those duties performed by hourly employees.[18]

Out of all of these non-managerial duties, Store Managers, and the company, identify Customer Service as the most important or primary duty of the Store Manager. AutoZone has a customer service policy implemented at all of the stores which requires employees, including the Store Manager, to immediately help customers identify problems, find a solution, and find the right parts for the vehicles. Autozone Store Managers are expected to place Customer Service above all else and cannot multitask while assisting customers with their needs.

Store Managers throughout the country lack the discretion to manage the stores. Store Managers are not allowed to make hiring decisions without the approval of the District Manager and Human Resources.[19] Similarly, Store Managers are not allowed to make termination or demotion decisions without the approval of the District Managers and Human Resources. *Id.* As detailed throughout, Store Managers have no control over employee pay, the payroll budget, merchandise selection, store layout, store hours, and merchandise location.[20] Throughout the country, it is the District Manager, not the Store Manager, who is in charge of each of these individual AutoZone

---

[18]PX 7 ¶ 10, 11, 14; PX 8 ¶10, 11, 14; PX 9 ¶ 10, 11, 14; PX 10 ¶ 10, 11, 14; PX 11 ¶ 10, 11, 14; PX 12 Moore Dec. ¶ 10, 11, 14. See also PX 13-27.

[19]PX 7 ¶ 12, 17, 21, 22; PX 8 ¶ 12, 17; PX 9 ¶ 12, 17; PX 10 ¶ 12, 17; PX 11 ¶ 12, 17: PX 12 ¶ 12, 17. See also PX 12-26.

[20]PX 7 ¶ 12-17, 19-22; PX 8 ¶ 12-17; PX 9 ¶ 12-17; PX 10 ¶ 12-17; PX 11; PX 12 ¶ 12-17. See also PX 13-27.

stores.  *Id.*

The company sends the store detailed "plan-o-grams" which specify where most every item in the store is placed.[21]  Store Managers are even sent "plan-o-grams" covering where items are to be placed in the office.  *Id.*  All sales strategies, promotions and displays were sent from the District Manager or above, and the Store Manager had no discretion in the implementation of these sales programs.[22]  AutoZone Store Managers have virtually no control or discretion over the important managerial duties which were required to run all of the stores throughout the country. See PX 7-27.

## III.  ARGUMENT

**A.    Plaintiffs Have Met All Requirements For Conditional Certification and Notice Under §216(b) Of The FLSA**

Collective certification and notice is warranted in this case because it is (and will remain) undisputed that every Store Manager is subject to the exact same company-wide, uniform job description, responsibilities and pay practices.  Every Store Manager is classified by AutoZone to be an exempt employee, not entitled to overtime pay for hours worked over forty (40) in a work week. Thus, AutoZone has unilaterally created the *class-wide* legal issue that will have to be uniformly decided for all Store Managers.  Additionally, the same facts that dictated 4 certifications of the same claims in the *Taylor v. Autozone* litigation, support certification in this case.  *See* PX 2 and 34.

### 1.  The *Taylor Litigation*

AutoZone previously filed a motion seeking to conduct some limited discovery in this case.

---

[21]PX7 ¶ 12, 13, 15; PX 8 ¶ 12, 13, 15; PX 9 ¶ 12, 13, 15; PX 10 ¶ 12, 13, 15; PX 11 ¶ 12, 13, 15; PX 12 ¶ 12, 13, 15. See also PX 13-27.

[22]PX 7 ¶ 12-15, 19-20; PX 8 ¶ 12-15; PX 9 ¶ 12-15; PX 10 ¶ 12-15; PX 11 ¶ 12-15; PX 12 ¶ 12-15. See also PX 13-27.

Doc. 19.  This motion was predominantly based on the previous decertification of the *Taylor* case in Arizona.  *Id.*   Essentially, the argument was that since *Taylor* ultimately ended up being decertified prior to trial, this Court should tread carefully in conditionally certifying this case.  *Id.*   This argument merits a closer examination of *Taylor* and the reasons that case was ultimately decertified.

*Taylor* was conditionally certified as a collective action on May 24, 2011.  PX 2.  Over 1,500 people opted into that case and the parties proceeded with discovery until the Court granted the defendant's motion for summary judgment on January 27, 2012.  PX 33 - Taylor Docket #278.  The *Taylor* plaintiffs appealed this order and on May 12, 2014, the Ninth Circuit Court of Appeals reversed this decision.  PX 3.  On August 21, 2014, the plaintiffs filed a motion to confirm certification of  the class.  PX 33 Taylor Docket #312.  After briefing, the Arizona District Court granted the plaintiff's motion to certify at the second stage of the proceedings.  PX 34 Doc. 319.

In the Order granting the motion to confirm certification, after full blown discovery was conducted, the District Court determined that the Store Managers who had joined the case were similarly situated by considering the following factors (1) the disparate factual and employment settings of the individual plaintiffs; (2) whether defendants' various defenses will require individual proof; and (3) fairness and procedural considerations.  PX 34 p.3.  The Court stated "[u]ltimately, the issue is whether plaintiffs are similarly situated such that the key elements of the FLSA claim can be addressed through representational proof."  *Id.*  The *Taylor* Court made detailed findings supporting its holding that

> It is indisputable that the putative class members share
> uniform job traits and responsibilities, compensation incentives,
> training, and evaluation criteria.  Slight variations among
> individual Store Manager's experiences are not enough
> to preclude a collective action under the FLSA.  It will be

11

> up to the jury to weigh the evidence to determine whether the
> essential character of the Store Manager's job is executive or
> non-executive, but the essential character of the job can be
> established by representational proof.

PX 34 pp. 4-6.

The *Taylor* parties then began preparing for trial.  Each side filed a trial brief. PX 33 Taylor

Docket ##334 and 338.  After receiving Plaintiffs' trial brief, the defendant filed a Motion to

Decertify the Class.  PX 33 Taylor Docket #341.  This decertification motion was denied by the Court

without prejudice depending on the evidence.  PX 33 Taylor Docket #355.  Essentially, the *Taylor*

Plaintiffs' Trial Brief indicated that they intended to prove the entire case on behalf of nearly 1,500

opt-in plaintiffs, using only the testimony of the 4 named plaintiffs.

On January 19, 2015, the day prior to the commencement of trial, AutoZone filed a Notice of

Settlement.  PX 33 Taylor Docket #357.  Then plaintiffs filed a Stipulation for Decertification of the

Collective Action and Dismissal of Opt-In Plaintiffs Without Prejudice and a Stipulation of Dismissal

of the Named Plaintiffs' With Prejudice was also filed by AutoZone.  PX 33 Taylor Docket ##358

and 359.  Based on these notices and stipulations, the District Court decertified the case, dismissed

the named plaintiffs with prejudice, and dismissed the opt-in plaintiffs without prejudice.  PX 1 p.

3.  The District Court specifically noted its concern for the opt-in plaintiffs "because plaintiffs'

counsel feared decertification for their failure to have been prepared to present evidence of damages

for the opt-in plaintiffs."  PX 1 p. 2.  The District Court even made sure the statute of limitations was

tolled for the opt-in plaintiff because of this concern.  *Id.*  The District Court was clear that the reason

for the decertification was the settlement of the named plaintiffs' claims and the lack of preparedness

to present evidence in support of the opt-in plaintiffs' claims.  *Id. Taylor* was not decertified because

of a finding that the plaintiffs and opt-in plaintiffs were not similarly situated, but instead because Plaintiffs' counsel was not prepared to submit sufficient representative evidence on behalf of the class. *Id.* There is no evidence that Plaintiffs and their counsel could not have marshaled this evidence, but instead the evidence shows that they were not prepared to present it at trial. *Id.* Nothing about the proceedings in *Taylor* indicate that this case cannot proceed collectively, rather, based on all of the orders in *Taylor* and the evidence submitted with the instant motion, this case is perfect for collective adjudication.

> **2. The Facts of This Case, Which Are Identical To *Taylor*, Warrant Conditional Certification**[23]

It is (and will remain) undisputed that AutoZone classified every Store Manager during the relevant time period as "Salary/Exempt" regardless of which Region, District, or store they work. It classifies each and every Store Manager as "Salary/Exempt" regardless of who is the Store Manager's District Manager or Regional Manager. It also classifies all Store Managers as "Salary/Exempt" regardless of the store location, store size, level of shrinkage, volume of merchandise, or any other store related characteristic. Such similar treatment by the company merits collective treatment by the Court.

The Eleventh Circuit utilizes a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. §216(b). *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001)(stating that the two-tiered approach "appears to be an effective tool for district courts to adopt in future

---

[23]With the critical exception that Named Plaintiffs and their counsel in this case will be prepared to present evidence at trial related to the opt-ins claims and damages through live testimony, documentary evidence, corporate witnesses, interrogatories or any other method approved by the Court .

cases").[24]

At the first stage ("Stage I" or "notice stage"), the "court makes a decision - usually based only on the pleadings and any affidavits which have been submitted -whether notice of the action should be given to potential class members." *Id.* at 1213-14.  Since the notice stage occurs in the beginning stages of litigation when only minimal evidence is available, a "fairly lenient standard" is applied, typically resulting in the conditional certification of the representative class. *Id.* at 1214.  Conditional certification in this case should be determined utilizing this more lenient Stage I standard because of the limited amount of discovery conducted in this case.[25]  Class members are given notice and the opportunity to "opt-in" and proceed forward as plaintiffs. Unlike plaintiffs in a Rule 23 class, §216(b) opt-in plaintiffs' SOL do not stop running until they have filed their consent to join form with the court.

At Stage I, Plaintiffs need only show that there are similarly situated individuals who, if given notice, may wish to join the action as party plaintiffs. *See Dybach v. State of Fla. Dept. of*

---

[24] The requirements for pursuing a §216(b) collective action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure. *See e.g. LaChapelle v. Owens Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (Rule 23 and §216(b) actions are "mutually exclusive and irreconcilable"). While a class action binds all class members who do not "opt-out," a collective action under the FLSA only binds those employees who "opt-in." *Id.* at 288 ("Rule 23…providing for 'opt-out' class actions, is irreconcilable with 216(b), providing for opt-in").

[25] However, based on the evidence submitted in support of this motion, certification under a more stringent standard is also warranted.  *See e.g., Kuntsmann v. Aaron Rents Inc.,* 2013 U.S. Dist. LEXIS 8734, * 8 (N.D. Ala. Jan. 23, 2013, Bowdre C.J.)( Holding that, "**there is nothing unfair about litigating a *single corporate decision* in a single collective action, especially where there is robust evidence that store managers perform uniform, cookie-cutter tasks mandated by a one-size-fits-all corporate manual.**" Aaron's "single corporate decision" to uniformly treat its GMs as exempt employees supports this court's decision to try this case as a single collective action under *Morgan*)(citing *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d at 1264)(emphasis added).

*Corrections*, 942 F.2d 1562, 1566 (11th Cir. 1991); *see Vaccaro v. Candidates on Demand*, 2008 WL 1711536 (S.D. Fla. 2008)(granting motion to authorize notice to potential class members where there was evidence that putative plaintiffs were similarly situated and others desired to join). To accomplish this it can be demonstrated that individuals to whom notice would be sent desire to participate, had similar job requirements and pay provisions. *See* 29 U.S.C. §216(b); *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989).

Plaintiffs anticipate that Defendant will argue that Plaintiffs and other Store Managers have not shown they have similar in job duties, that individualized defenses apply to certain employees; and thus, class certification would be inappropriate. Such an argument regarding the factual nature of Plaintiffs' claims and Defendant's defenses, if any, is irrelevant at this stage of the notification process. First, as numerous courts have held, the job duties of the plaintiffs and whoever opts into the case do not have to be identical - they only have to be similar. *Tucker v. Labor Leasing*, 872 F. Supp. 941, 947 (M.D. Fla. 1994). Second, the declarations submitted by the Plaintiffs clearly establish that Store Managers all perform the same job duties and this does not vary from store to store.  See Exhibits 7-27.  In fact, Defendant chose to deem all store managers exempt regardless of any such differences it may now argue in opposition to conditional certification of this FLSA collective class. *See* Exhibits 4-27.

Nonetheless, a factual analysis regarding the "individualized" nature of Plaintiffs' claim, if any, and Defendant's defenses, if any, is more appropriate via a Motion to Decertify at the conclusion of substantial discovery, not at Stage I with only limited discovery completed. *See Pendlebury v. Starbucks Coffee Co.*, 2005 WL 84500 * 3 (S.D. Fla. Jan. 3, 2005)(court does not consider individualized defenses in permitting Stage I notification); *Cameron-Grant v. Maxim Healthcare*

15

*Services., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003) ("The first determination is made at the so-called 'notice stage'….Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in a conditional certification of a representative class. The action proceeds as a representative action throughout discovery."); *Grayson v. K Mart Corp*., 79 F.3d 1086, 1096 (11th Cir. 1996) ("We hold that section 216(b)'s 'similarly situated' requirement is less stringent than that for joinder under Rule 20(a) or for separate trials under rule 42(b)."). Thus, setting Defendant's anticipated arguments aside for purposes of Plaintiffs' Stage I Motion, Plaintiffs clearly have met their burden of proof on the "similarly situated" prong under *Hipp*.

The chief purpose behind the opt-in procedure set forth in §216(b) of the FLSA is that of judicial economy. As a general rule, and certainly in this case, the FLSA was, and is designed to protect the working class individuals. By granting conditional certification and issuing notice, these potential plaintiffs will be adequately and properly advised of their rights under the FLSA and the Court will be promoting judicial economy by avoiding the possible filing of multiple individual lawsuits to redress the same illegal decision by AutoZone for misclassifying its Store Managers as "Salary/Exempt" employees not entitled to overtime. These similarly situated Store Managers are known to AutoZone and are readily identifiable through AutoZone's payroll and employment records.

Along with their Complaint, the 23 declarations now submitted and the 58 consent to join forms that have been filed with this Court to date, along with the evidence filed in the Taylor litigation, the plaintiffs have met the lenient burden they must meet in order for this Court to authorize the sending of notice. *Grayson*, 79 F.3d 1086, 1096 (11th Cir.), *cert. denied*, 519 U.S. 982, 117 S.Ct. 435 (1996); *see also, Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995)(applying a "fairly lenient standard" for §216(b) determinations).

16

### a. It Is Undisputed That Other Store Managers Desire To "Opt-In" To This Case

Under the FLSA, plaintiffs must affirmatively opt in to become class members. *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 288 (5th Cir. 1975). A widely accepted way to make such a showing that others have a desire to "opt-in" is by submitting consent to join forms signed by others who wish to participate. Many courts look to these pre-certification opt-in consents as evidence on the question of whether a collective action should be conditionally certified. *Piper v. RGIS Inventory Specialists, Inc*., 2007 WL 1690887, at *6 (N.D. Cal. 2007)(citing cases); *see Frye v. Baptist Memorial Hospital, Inc*., 2008 WL 2117264, at *3 (W.D. Tenn. 2008), *citing Piper*, 2007 WL 1690887, at *6; *see also Kairy v. Supershuttle International, Inc*., et al, 2009 WL 1457971 (N.D. Cal. 2009)( holding "[t]here is little case law addressing what constitutes a valid opt-in consent. However, the Court does not find that the consents already submitted are invalid, but rather finds that the number of submissions is some evidence that members of the class may be similarly situated.").

Courts in this district have held that where "'consents to [participate in the suit] [have] already [been] filed," district courts in the Eleventh Circuit have found that, "for purposes of deciding [a] motion for conditional collective action certification," the already-filed consents to opt-in established "that there were persons....who would join in [the] suit if they had notice." *See Billingsley v. CitiTrends*, 2013 U.S. Dist LEXIS 8910, *6 (Bowdre, J.) quoting *Barron v. Henry Cty. School Sys.,* 242 F.Supp.2d 1096, 1101 (M.D. Ala. 2003).

In this case, where 53 individuals have already opted-in to this lawsuit, joining the original 5 named plaintiffs, this participation signifies a desire to opt-in by other potential members of the class. Moreover, the court can take judicial notice that over 1,500 individuals opted-into the *Taylor*

17

litigation and were ultimately dismissed without prejudice pursuant to a stipulation between the defendant and the named *Taylor* plaintiffs. Plaintiffs are seeking to send notice to this group of individuals who have already shown a willingness to participate in litigation against AutoZone on these same claims.  In addition, Plaintiffs have shown that the number of putative Opt-in Plaintiffs is large enough to justify certification as AutoZone employs Store Managers in over 5,200 stores in all 50 states.

### b.   AutoZone Treats All Store Managers Similarly As Exempt Employees Not Entitled To Overtime

The Eleventh Circuit has repeatedly held that "Plaintiffs need show only that their positions are similar, **not identical**, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1219 (quoting *Grayson*, 79 F.3d at 1097)(emphasis added). Indeed, the "similarly situated requirement of §216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Hipp,* 252 F.3d at 1219. The requirement that the proposed collective action involve individuals who are "similarly situated" as to job requirements and pay provisions is no overly burdensome at Stage I.  It is sufficient that the defendant itself considers these employees to be similar as to job requirements and pays them according to a similar compensation plan.

As is widely recognized, an illegal policy or practice that is common to all potential plaintiffs is a strong factor in favor of certification. *Hutton*, 2007 U.S. Dist. LEXIS at *5, citing *Basco v. Wal-Mart Stores, Inc*., 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709 (E.D. La. 2004); *England v. New Century Financial Corp*., 370 F. Supp. 2d 504 (M.D. La. 2005). Here, there is no dispute that all Plaintiffs and potential Plaintiffs are similarly classified and subjected to the same illegal pay

practice.

In this case, AutoZone cannot explain away that it has unilaterally chosen to classify each and every Store Manager as "Salary/Exempt", regardless, and without any consideration, of store size, years of service, shrinkage in the store, Region, District, Area, Manager, hours worked, volume, location, area, State, or any other store characteristic. *See* PX 6-26. Thus, AutoZone has conceded from the outset that, whether Store Managers are or are not eligible for overtime, is determined by a "company policy." *Id*. All Plaintiffs have the same identical claim arising out of this same company policy. When, as here, a Plaintiff comes forward with evidence of common claims, the maintenance of a collective action under 216(b) is appropriate. *See, e.g., Moss v. Crawford & Co.,* 201 F.R.D. 398, 410 (W.D. Pa. 2000).

AutoZone's company-wide pay decision to classify every Store Manager as exempt was not made one Store Manager at a time, looking at the particular circumstances of each manager, but rather was based on an across-the-board unilateral determination that all Store Managers are similarly-situated and not entitled *as a group* to overtime compensation for work over forty (40) hours per week.[26] Defendant will not be able to argue that each Store Manager was evaluated on an individual basis to determine whether they were to be classified as exempt or non-exempt as defined under the FLSA. Rather, it made the across-the-board decision to classify all Store Manager as exempt,

---

[26] Defendant will likely try and argue that Store Manager's "experiences" or "work environments" are so different that collective certification is unwarranted. Not only are these factual arguments irrelevant at this stage, *Dybach*, 942 F.2d at 1567-68; *Grayson*, 79 F.3d at 1097, but this argument raises a far more important question for Defendant – then why did Defendant uniformly choose to classify every Store Manager as exempt throughout the entire relevant time period of this case when it has the **obligation and responsibility** to determine, on an individual by individual basis which Store Managers met the requirements to be exempt and which Store Managers did not.

regardless of any potential factual differences in their work environment, experiences, store characteristic, location, or anything else. (Defendant's Answer, Doc. 6, ¶ 25, 31, 32).  Defendant admits that all Store Managers work pursuant to the same job description, receive the same training, and work under the same policies and procedures throughout the company.  *Id.* at ¶ 31, 32.

Defendant's admissions in its *Answer* alone are more than sufficient to satisfy the "lenient standard" prescribed for by the Eleventh Circuit at Stage I. *Hipp*, 252 F.3d at 1218-19; *see Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (affidavit of named plaintiff sufficient for conditional certification where all potential collective action members had same position and were classified as exempt at over 108 facilities, which were located across 21 states); *Hutton v. Bank of Am.*, 2007 U.S. Dist. LEXIS 97516 (D. Ariz. Mar. 31, 2007)("[A]ll the potential Plaintiffs were affected identically by Defendant's decision not to classify [them] as overtime eligible under the FLSA").

Finally, fairness and procedural considerations make it reasonable and efficient to grant certification and provide notice at this stage because if certification were denied and the individual Plaintiffs and opt-ins maintained separate suits, not only would Defendant raise the exact same defense– i.e. the Store Manager was properly classified as exempt, but this would lead to inconsistent interpretations of whether Defendant properly classified Plaintiffs as overtime exempt. This does not aid in efficient resolution for the Plaintiffs, for the Federal Court system, or even for Defendant. Since all these factors the Court may consider weigh in favor of certification, conditional certification should be granted.

### c.  Store Managers Have Similar Job Duties And Pay

It is AutoZone's burden to show that an employee is properly exempt. See, e.g., *Corning*

*Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)("... application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof") (citations omitted). Moreover, any such exemptions from FLSA overtime requirements are to be "narrowly construed against employers seeking to assert them ...." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

Not only did Defendant uniformly decide to exempt every Store Manager, but the evidence, at this stage, already affirms that Store Managers have similar knowledge of the job requirements set forth in the Store Manager's Job Description and that these job requirements are the same for all of Defendant's Store Managers. Defendant does not (and cannot) dispute that the same job description applies to all of its Store Managers. (Defendant's Answer, Doc. 6, ¶ 31, 32.)

The declarations from each of the 23 plaintiffs and company officials from various districts, regions, and states, also verify that the job requirements for Store Manager is the same uniformly - in all stores, whether large or Store Manager all in physical size or whether large or small  in terms of customer base or sales volume, in all geographic locations, whether rural, urban, suburban. *See* PX 4-27.  Most telling is that nowhere on Defendant's Store Manager Job Description does it make any exceptions based on location, store size, region, state, or any store characteristic. PX 28 - Store Manager Job Descriptions.

Plaintiffs, and other similarly situated Store Managers, primarily spend their work time performing non-managerial functions, including, but not necessarily limited to, running the cash registers, stocking merchandise, assisting customers, taking out the trash from the store, and multiple other janitorial duties. *See* PX  7-27.  These are the same duties as hourly paid employees. *Id*. Because of the similarity from Store Manager to Store Manager, Plaintiffs, and other similarly

21

situated Store Managers, are entitled to conditional certification and notice for this collective class.

The fact that Defendant's Store Managers are "similarly situated" to one another for purposes of conditional certification and notice is also attested to by the fact that Store Managers are trained in the same way. *See* Defendant's Answer, Doc. 6, ¶ 31, 32. All Store Managers are provided the same training subjects and are trained on the same policies and procedures regardless of store location or store characteristic. Id. Such similar training and uniform classification attests to the Store Managers being "similarly situated" as to job responsibilities regardless of any store differences or characteristic.

Furthermore, AutoZone Store Managers' job duties are identical or similar to hourly paid employees such as Assistant Store Managers ("ASMs") or Parts Sales Managers. *See* PX 7-27. These two job titles are hourly paid positions, entitled to overtime compensation, that perform similar, if not identical, functions as Store Managers.

It is clear that AutoZone Store Managers are treated similarly in all respects: exempt classification, pay, job duties, responsibilities, and policies and procedures. This similar treatment is a function of AutoZone's decision to treat all Store Managers the same and the "top-down" business model where all decisions flow from higher management into the stores for implementation. *Donohue v. Francis Services, Inc.*, Civ. A. No. 041-170, 2004 WL 1161366, at *1 (E.D. La. 2004)(quoting *Whitworth v. Chiles Offshore Corp.*, 1992 WL 235907, at *1 (E.D. La. 1992))("[A] court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."). Thus, conditionally certifying this case and issuing notice is not only warranted but also promotes judicial economy.

22

B.      **Judicial Economy Requires Conditional Certification**

In *Hoffman-La Roche*, 110 S. Ct. 482 (1989), the Court explained that collective actions permit: "plaintiffs the advantage of lower individual costs to vindicate their rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity." *Id.* at 485. "For these benefits to be realized, however, persons who may have been aggrieved by the unlawful conduct must be provided accurate and timely notice of the collective action so that they can make informed decisions about whether to participate." *Id.* A collective action is favored because it serves the legitimate goals of avoiding a multiplicity of duplicative lawsuits and expediting disposition of the action. *Id*. at 473. It also allows plaintiffs to vindicate their rights by pooling their resources. *Id*. at 170. As is the case here, the judicial system clearly benefits by the efficient resolution, in one proceeding, of common issues of law and fact arising from the same unlawful misclassification of all Store Managers. *Id*.

It is unclear how judicial economy would not be served by addressing the claims against Defendant under one collective action. The results of denying notice will necessitate this Court and others to address identical claims in multiple cases. *See Wilks v. PepBoys, Inc.*, 2006 WL 2821700 at *8 ("[A]ny requirement that each plaintiff prove his or her claims individually would waste more judicial time and resources than trying their cases individually would preserve."). It is undisputed that Plaintiffs were all effected identically by Defendant's decision not to classify them as overtime eligible under the FLSA. This question of law will and should be answered as to each Store Manager at the same time in the same fashion. Any argument that multiple individual lawsuits would be more manageable and efficient than one collective action is simply untenable.

Denying certification would lead to multiple individual cases being filed to address the same

23

legal claim and Defendant's same misclassification. Furthermore, if these individual cases are resolved in Plaintiffs' favor, undoubtedly additional plaintiffs will come forward who could have been included in the class if they had been given an opportunity to receive notice. Additionally, multiple-case litigation would likely result in varying outcomes which deal with the same issues and company policy and practice. *Hutton*, 2007 U.S. Dist. LEXIS at *5 ("[If] individual Plaintiffs maintained separate suits, inconsistent interpretations of whether Defendant properly classified Plaintiffs as overtime exempt may result."). Surely, Defendant does not want this to turn into having to decide on an individualized basis which Store Manager are exempt and which ones are not, considering it has already chosen to label all of them exempt throughout the relevant time period. If that is Defendant's goal, it should have exercised its legal obligation to make these individualized exemption determinations *prior* to being brought before this Court.

While Plaintiffs believe they have met their burden at this first stage of analysis, showing common claims and facts, Plaintiffs assert any issue or concerns that this Court may have related to similarity can easily be addressed by the Court during the second stage analysis under *Hipp* through the utilization of sub-classes.  Courts across the country have consistently held that in the interest of judicial economy, the utilization of sub-classes is a viable method of case management and traditionally is considered at the second stage analysis. *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 564 (E.D. Va. 2006) (existence of subclasses do not "undermine the benefit associated with collective actions, including judicial economy and efficiency by avoiding multiple lawsuits and repetitious evidence"); *King v. Koch Foods of Mississippi, LLC*, 2007 WL 1098488 (S.D. Miss. Apr. 10, 2007) ("In granting conditional certification, the court is aware that discovery may show that certain plaintiffs are not similarly situated, and if this is the case, the court can decertify that class or

24

can create subclasses."); *Ryan v. Staff Care, Inc.*, 497 F.Supp.2d 820, 826 n. 3 (N.D. Texas July 6, 2007) (while differences in employee's pay classifications might demonstrate "the need for sub-classing in this case, "such differences did not warrant denial of conditional certification).

C.     **Form and Method of Notice**

Attached as Exhibit 35 hereto is Plaintiffs' proposed Notice, to be sent to (1) all current and former Store Managers of AutoZone nationwide (excluding California and Puerto Rico) who were employed as Autozone Store Managers from February 27, 2012 to the present; and (2) all individuals who had filed opt-in consents in the case of *Taylor v. Autozone*, case no. 3:10-cv-08125-FSM in the United States District Court for the District of Arizona. The proposed Notice is both fair and adequate and prevents misleading communications to potential party members. Plaintiffs propose that the attached Notice is timely, accurate, and informative. It provides notice of the pendency of the action and of the opportunity to opt-in. The Plaintiffs' claims are accurately described as is the composition of the collective class. The potential opt-ins are advised that Defendant is defending against the claims and that they must opt-in to the case if they wish to participate in this action or they may engage legal counsel of their own choosing to bring a claim on their behalf.[27] The notice also provides clear instruction on how to opt-in, the legal effects of joining the suit, the legal effects of not joining the suit, and accurately states the prohibition against retaliation for participation in this FLSA action.

Plaintiffs propose if the Court grants this Motion that within fourteen (14) days of the Court granting this Motion, Defendant shall provide Plaintiffs' counsel an employee list of all current and former Store Managers in the putative class. The list will need to be in a computer-readable,

---

[27]Due to the potentially large size of the collective class, Plaintiffs propose using a 3rd Party Administrator to handle the sending and receiving of notice to putative class members.

searchable, and sortable data file (in Microsoft Excel format) containing the names, mailing addresses, employment information (store #s worked at, States worked in, whether they are current or former employees, and if former, when they ceased employment with Defendant), electronic mail addresses, Social Security Number and telephone numbers of such potential opt-ins so that notice may efficiently and adequately be disseminated. To the extent Defendant does not maintain any of the requested information, it shall contact Plaintiffs' counsel to address any issue.

As is consistent with established practice under the FLSA, Plaintiffs' request the notice period close 90 days after notice is sent to putative Plaintiffs. *Hipp*, 164 F.R.D. at 576 (M.D. Fla. 1996)(120-day filing period). Upon the filing of each Plaintiff's Consent form, their individual Statute of Limitations will be tolled.

Plaintiffs further request the Court require throughout the notice period, that Defendant post the approved notice letter on its website, in a company news letter(s) to employees, on bulletin boards at each of its store locations, and through a company email to the Store Managers currently working for AutoZone. The act of posting notice of an FLSA lawsuit in a defendant's workplace is common. Indeed, this very approach has been adopted by numerous other courts in adopting the broad remedial and notice purposes under the FLSA. *See Johnson v. Am. Airlines, Inc.* 531 F. Supp. 957, 961 (N.D. Tex 1982) (finding direct mail and posting on company bulletin boards as reasonable); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. April19, 2006) (finding that first class mail combined with posting provided the "best notice practicable" to the potential class); *Veliz v. Cintas Corp.*, 2004 WL 2623909, at *2 (N.D. Cal. Nov. 12, 2004) (requiring employer to post notice and consent forms in all of its work sites); *Davis v. America's Catch, Inc.*, Case No. 4:09CV53-SA-DAS (N.D. Miss. September 14, 2010)(requiring posting on bulletin boards in the

26

facility); *Parker v. HealthCare Investment Group,* 5:14-cv-02247-IPJ, Northern District of Alabama (Doc. 37, May 6, 2015)(Johnson, J.)(requiring FLSA Defendant to post a copy of the court-ordered notice in its facility).

     **D.**     **Notice Must Be Expedited Due To The Running Of The Statute Of Limitations**

Notice is of the essence in order to toll the running of the statute of limitations with respect to the claims of the potential opt-ins who have worked as "Store Managers" for Defendant within the past three (3) years and those tolled by the *Taylor* order. While the statute of limitations is tolled for the named plaintiffs when the complaint is filed, for those current or former employees who opt-in, the statute is tolled only on the later date when each individual's written Consent is filed with the Court. *Grayson*, 79 F.3d at 1105-1106; 29 C.F.R. §790.21(b)(2). Therefore, notice should be expedited to the maximum extent feasible.

<u>Conclusion</u>

Plaintiffs have met all the requirements for authorizing notice under Eleventh Circuit standards in this case. The number of current and former Store Managers who have opted into this lawsuit already is sufficient for showing that there are others who desire to participate. Plaintiffs have also shown that Defendant uniformly treats all Store Managers similarly as to job requirements, duties, and method of compensation. This Court is well within its discretion for authorizing notice based on the evidence at this juncture.

WHEREFORE, PREMISES considered, Plaintiffs respectfully request that the Court grant this Motion for Conditional Certification and Court Approved Notice to be sent to all current and former Store Managers employed by AutoZone from February 27, 2012 to the present and all individuals who previously opted in the *Taylor* case.

27

Respectfully submitted,

/s/ Rocco Calamusa, Jr.
Rocco Calamusa, Jr. (ASB-5324-A61R)
Kevin W. Jent (ASB-0804-E61K)
WIGGINS, CHILDS, PANTAZIS,
   FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500 (Telephone)
(205) 254-1500 (Facsimile)
Rcalamusa@wigginschilds.com
Kjent@wigginschilds.com

/s/ John A. Wilmer
John A. Wilmer (ASB-7110-R73J)
Walter A. Kelley (ASB-8687-L54W)
WILMER AND LEE, P.A.
100 Washington Street, Suite 100
Huntsville, Alabama 35801
(256) 533-0202 (Telephone)
(256) 533-0302 (Facsimile)
jwilmer@wilmerlee.com
wkelley@wilmerlee.com

/s/ Mitchell K. Shelly
Mitchell K. Shelly (ASB-5458-H59M)
James M. Coder (ASB-4256-C41J)
Alexander, Corder & Shelly, P.C.
215 S. Jefferson Street
Athens, AL 35611
(256) 232-1100 (Telephone)
mshelly@acpbs.com
jcorder@acpbs.com

28

**CERTIFICATE OF SERVICE**

I certify that the foregoing has been served upon all counsel of record by e-filing with the Court's electronic filing system on this day, January 29, 2016.

K. Bryance Metheny
Michael L. Lucas
Amy K. Jordan
BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203

/s/ Rocco Calamusa, Jr.
OF COUNSEL

29