FILED
2019 Oct-21  PM 05:41
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| HOPE M. CARR, DWIGHT BRYANT, JR., ALLEN S. MOBLEY, JR., MARK W. CLARK, JR., AND PAUL LOY, on behalf of themself and other persons similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 5:15-cv-00356-AKK |
| AUTOZONERS, LLC; AND AUTOZONE STORES, INC., | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO 705 OPT-INS WHOSE CLAIMS ARE BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS (DOC. 534)**

Rocco Calamusa, Jr.
Kevin W. Jent
H. Wallace Blizzard
WIGGINS CHILDS PANTAZIS
    FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Counsel for Plaintiffs

CO-COUNSEL:
John A. Wilmer
Walter A. Kelley
WILMER AND LEE, P.A.
100 Washington Street, Suite 100
Huntsville, Alabama 35801

Mitchell K. Shelly
James M. Coder
Alexander, Corder & Shelly, P.C.
215 S. Jefferson Street
Athens, AL 35611

TABLE OF CONTENTS

I.     INTRODUCTION.............................................................................................1

II.    RELEVANT FACTUAL ALLEGATIONS......................................................1

       A.    RELEVANT PROCEDURAL HISTORY.................................................1

       B.    RELEVANT FACTUAL ALLEGATIONS...............................................4

III.   ARGUMENT...................................................................................................10

       A.    Willfulness............................................................................................11

             1.    Courts Have Held That Store Managers Were
                   Misclassified as Executives Based on Similar Facts.................12

             2.    Defendant's Evidence of Consultation with Outside
                   Counsel Falls Well Short of What is Required to
                   Gain Summary Judgment.............................................................15

             3.    AutoZone's Alleged Reviews of the Store Manager
                   Position Were Cursory At Best and were Designed to
                   Arrive at the Conclusion That Store Managers Were
                   Exempt.........................................................................................21

       B.    EQUITABLE TOLLING......................................................................24

             1.    Taylor Plaintiffs.........................................................................29

             2.    Non-Taylor Opt-Ins.....................................................................30

# I.  INTRODUCTION

Defendant's Motion for Summary Judgment on 705 Opt-in Plaintiffs' claims based on a two-year statute of limitations is due to be denied.  As an initial matter, there is a jury question as to whether AutoZone's violation of the FLSA is willful or not.[1]  Second, the evidence in this case supports the application of equitable tolling to prevent the statute of limitations from barring these Plaintiffs' claims.  Therefore, Defendant's Motion for Summary Judgment is due to be denied in its entirety.[2]

# II.  RELEVANT FACTUAL ALLEGATIONS

## A.   RELEVANT PROCEDURAL HISTORY

1.     On July 16, 2010, a group of AutoZone Store Managers filed *Taylor et al., v. AutoZone, Inc.,* 3:10-cv-08125-FJM, alleging that they had been mis-classified as exempt employees and therefore were not paid overtime wages they were owed. PX 1 - Taylor Complaint.

2.     *Taylor* was conditionally certified as a collective action on May 24, 2011.  PX 2. Over 1,500 people opted into that case and the parties proceeded with discovery until the Court granted the defendant's motion for summary judgment on January 27, 2012.  PX 3 - Taylor Doc 278.

---

[1] It is difficult to even address the issue of willfulness without having a finding that AutoZone has violated the FLSA.  That is one of the main reasons this determination should not be made until after a liability determination has been made by the jury.

[2] The Defendant has moved to dismiss 705 Plaintiffs in this motion. If the Court denies the summary judgment motion related to willfulness, and either denies to apply equitable tolling or applies equitable tolling in part or in whole, then a determination will have to be made as to each Plaintiff's timeliness based on their termination date, opt-in date and the court's selected tolling date, if applicable.  Plaintiffs submit that the best way to determine this would be for the Court to allow the parties an opportunity to resolve each individual's statute of limitations eligibility based on the Court's rulings on willfulness and tolling.

3.      The *Taylor* plaintiffs appealed this order and on May 12, 2014, the Ninth Circuit Court of Appeals reversed this decision, finding that the claims of the *Taylor* plaintiffs (which are identical to the claims brought by the current Named and Opt-in Plaintiffs) were improperly dismissed on summary judgment and that disputed issues of material fact required that the claims by tried by a jury. PX 4 - Taylor 9th Cir. Op. The Ninth Circuit's summary judgment ruling in *Taylor* is in line with the Eleventh Circuit's handling of similar store manager exemption cases and even cites these cases.  *See e.g., Morgan v. Family Dollar*, 551 F.3d 1233,1249; *Rodriquez v. Farm Store Grocery, Inc.,* 518 F.3d 1259 (11th Cir. 2008).

4.      On August 21, 2014, the *Taylor* Plaintiffs filed a motion to confirm certification of the class.  PX 5 Taylor Docket 312.  After briefing, the Arizona District Court granted the plaintiff's motion to certify at the second stage of the proceedings.  PX 6 Taylor Doc. 319.

5.      The *Taylor* parties then began preparing for trial.  Each side filed a trial brief. PX 7 Taylor Docs 334 and 338.  After receiving Plaintiffs' trial brief, the defendant filed a Motion to Decertify the Class.  PX 8 Taylor Doc 341.  This decertification motion was denied by the Court without prejudice depending on the evidence.  PX 9 Taylor Doc 355. Essentially, the *Taylor*  Plaintiffs' Trial Brief indicated that they intended to prove the entire case on behalf of nearly 1,500 opt-in plaintiffs, using only the testimony of the 4 named plaintiffs.

6.      On January 19, 2015, the day prior to the commencement of trial, AutoZone filed

a Notice of Settlement.  PX 10 Taylor Doc 357.  Then plaintiffs filed a Stipulation for Decertification of the Collective Action and Dismissal of Opt-In Plaintiffs Without Prejudice and a Stipulation of Dismissal of the Named Plaintiffs' With Prejudice was also filed by AutoZone.  PX 11, Taylor Doc 358 and 359.  Based on these notices and stipulations, the District Court decertified the case, dismissed the named plaintiffs with prejudice, and dismissed the opt-in plaintiffs without prejudice.  PX 12 p. 3 - Taylor Opinion and Order Dismissing Case.

7.      The District Court specifically noted its concern for the opt-in plaintiffs "because plaintiffs' counsel feared decertification for their failure to have been prepared to present evidence of damages for the opt-in plaintiffs." PX 12 p. 2.  The District Court even made sure the statute of limitations was tolled for the opt-in plaintiff because of this concern. *Id.*  The District Court was clear that the reason for the decertification was the settlement of the named plaintiffs' claims and the lack of preparedness to present evidence in support of the opt-in plaintiffs' claims.  *Id.*

8.      The Named Plaintiffs filed this case on February 27, 2015.  Doc. 1.  On May 21, 2015, Plaintiffs initially moved for conditional certification of the opt-in class.  Doc. 12.  Defendant moved to stay briefing and ruling on this motion, which was granted by the Court on June 10, 2015.  Docs. 19 & 22.  The parties were ordered to confer and formulate a schedule for limited class discovery and conditional certification briefing.  Doc. 22.  A scheduling order was entered and the parties conducted class discovery.  Doc. 35.

9.      On January 29, 2016, Plaintiffs re-filed their motion for conditional certification.

3

Doc. 38.   The parties briefed the matter and briefing was closed on April 4, 2016.  Docs. 44 & 56. The Court granted conditional certification on September 14, 2016 and ordered the parties to submit a mutually agreeable form of notice for approval by November 4, 2016.  Doc. 67.

10.    The parties submitted a joint proposed notice on November 4, 2016.  Doc. 69. Because the joint notice had not yet been approved, on January 31, 2017, the parties then filed a joint motion for a status conference to discuss and seek approval of the notice. Doc. 71.

11.    The Court granted the motion for status conference on May 31, 2017, and held a conference on June 7, 2017.  Doc. 72.  On June 8, 2017, the Court entered an Order approving the proposed plan to facilitate notice and the form of the notice.  Doc. 73. Notice was sent to putative class members in July 2017, and approximately 1,600 individuals submitted consent to join forms.

## B.    RELEVANT FACTUAL ALLEGATIONS

12.    Dan Barber was the AutoZone Director of Compensation and along with Nancy Stephens was designated as a 30(b)(6) representative to testify regarding AutoZone's decision to classify Store Managers as exempt, any efforts made to ensure that Store Mangers were properly classified as exempt, and all studies, analyses, and/or surveys conducted to determine if Store Manager's job duties qualified them for the executive exemption.  *See* PX 13 - 30b6 Notice; PX 14 - 10/30/18 Email from Robbin Stewart.  No one else was designated to testify regarding these topics.  *Id.*

13.    Barber   was   AutoZone's   Director   of   Compensation   from   2000   until

September/October 2018.  PX 15 Barber Depo p. 8:3-12.

14.     According to Barber, the determination to not pay AutoZone Store Managers overtime was made before he became employed in 2000 and has remained in place the entire time he worked there.  PX 15 pp. 19:24-20:7.   This determination was made and has been continually applied regardless of division, region, district, geographical location, type of store, sale volume or number of employees.  PX 15 pp.20:8-21:4.  This exemption has been applied across the board to store managers in all stores, except those in California and Puerto Rico, from at least 2000 to the present.  *Id.* at 21:14-21; PX 16 - Nancy Stephens Depo p. 45:1-5.

15.     Barber states that in the early 2000's the company received advice from outside counsel regarding Store Manager classification during litigation regarding California Managers; however, Barber provided no specifics as to what exactly this advice was, what was reviewed as a basis for the advice, and who made the decision to follow the advice.  PX 15 p. 24:1-20.

16.     Barber played some role in reviewing the classification of Store Managers in some time period between 2000 and 2002, related to the re-classification of California Store Managers to non-exempt.  PX 15 pp. 24:1-25:20.  Senior-level management was also involved in this review.  PX 15 pp. 25:21-26:10.

17.     According to Barber, he did not review company policies and procedures to determine if Store Managers were appropriately classified and as corporate representative is unaware if anyone reviewed these policies and procedures in making this determination.  PX 15 p. 30:1-7.

18.    Barber did not look at the amount of time Store Managers spent performing specific tasks.  PX 15 p. 32:5-9.

19.    Barber did not look at the amount of time Store Managers spent performing non-managerial versus managerial tasks.  PX 15 p. 32:10-15. He also did not look at the amount of time spent performing exempt work. PX 15 p. 34:12-15.  As a result, he did not perform any concurrent duties analysis.  PX 15 pp. 31:7-23, 32:5-19.

20.    Barber's review of the actual tasks performed by Store Managers was limited to speaking to executives with the title of director who are all at the Store Support Center, and did not involve speaking with managers. PX 15 pp. 33:20-34:11.

21.    Barber looked some at Store Managers' relative freedom from supervision, but then admits that he did not look at the scheduling policies and procedures, the corrective action policies and procedures, or the specific details of how District Managers monitor stores. PX 15 pp. 34:25-35:1, 3-6, 8-12,14-18, 21-36:3, 6-38:8, 10-14. Barber did not look at the relationship between Store Manager pay and the pay of other store employees.  PX 15 pp. 38:25-39:3.

22.    As corporate representative, Barber is unaware that any other AutoZone official or employed reviewed any of the items contained in paragraphs 17-21, above, as part of this review.

23.    Barber's recommendation on the classification issue was based on spending two days in two stores and talking with executive-level management at the home office.  PX 15 p. 30:20-25.  He did not conduct any study or survey to determine whether Store

Managers were properly classified.  PX 15 p. 31:1-4.

24.     As corporate representative, Barber testified that from 2000 to 2016, the company did not conduct any review of the classification of Store Managers.  PX 15 pp. 46:24-48:13.

25.     In 2016, prompted by Congress' discussions regarding increasing the salary basis test, AutoZone undertook a review of the salary levels of the Store Managers outside of California.  PX 15 pp. 46:24-48:13.  At that time, the company did not review any parts of the executive exemption analysis, other than Store Manager salaries. PX 15 p. 48:5-7.

26.     Barber acknowledged that policies and procedures evolved, systems and processes changed, the scheduling system was completely overhauled and there had been improvements in the store automation, yet the company had not reviewed the Store Manager classification AutoZone since the early 2000's.  PX 15 pp. 48:16-50:9.

27.     Nancy Stephens was AutoZone's Director of Field HR was also a 30(b)(6) designee on (1) efforts the Defendant has made to ensure that Store Managers are properly classified; (2) all investigations, audits or inquiries by the DOL; and (3) all lawsuits filed against Defendant alleging improper classification of Store Managers. PX 13 & 14.

28.     According to Stephens, as a corporate representative and Director of Field HR, she is not aware of any review that AutoZone has undertaken since 2000 related to the Store Managers' exemption classification or any study or analysis conducted to determine the actual duties of the Store Manager.  PX 16 pp. 50:14-52:10.  Likewise, Stephens is not aware of any studies or analyses performed as to the amount of time Store Managers spent

performing specific duties or performing non-managerial versus managerial duties.  *Id.*

29.     Stephens is not aware of any study or analysis performed by AutoZone or anyone on their behalf related to the factors set forth in the FLSA or the corresponding regulations.  PX 16 p. 50:24-51:2.

30.     Defendant now attempts to rely on a declaration from Alison Smith, a former in-house counsel, who was not designated as a corporate representative and who was not even listed on Defendant's Rule 26 Disclosures until after discovery closed.[3]  *See* Doc. 536-9;  PX 14 - Corporate Rep Designations; PX 17 - Defendant's Second Post-Certification Supplemental Disclosures.

31     Smith discusses the early 2000's classification review and decision in her declaration, which she relates to litigation in California.  Doc. 536-9 ¶5.  As a result of this review, AutoZone reclassified its California Store Managers from exempt to non-exempt.  *Id.*  Smith states that the company's outside counsel, Littler Mendelson, provided advice that Store Managers outside of California were properly classified as exempt.

32.     Smith does not provide any evidence in her declaration of the process that gave rise to counsel's advice and does not describe any of the documents or other items considered or reviewed by Littler or AutoZone in order to reach this recommendation.  Doc. 536-9.  There is no mention of whether either reviewed the actual job duties of store managers, or the time spent performing exempt vs. non-exempt duties, or the time actually spent managing versus just being "held responsible" for managing or supervising employees,

---

[3]Defendant employed a similar tactic in responding to Plaintiff's Motion for Conditional Certification and relied on witnesses who were not disclosed until after discovery had ended in their opposition.  *See* Doc. 55.

or if managers were performing managerial and non-managerial duties concurrently.[4] Doc. 536-9. Defendant has not produced any documents or opinion letters validating their counsel's opinion or AutoZone's classification decision. *See* Doc. 536.

33.    This classification review and decision was made in pre-2004. PX 15 pp.76:5-77:8. The FLSA regulations changed in 2004, including provisions related to concurrent duties. *See Morgan v. Family Dollar* at 1268, n.54.

34.    Moreover, the concurrent duties analysis is not and has never been as simple as Smith's declaration makes it out to be in paragraph 5. 536-9 ¶5. Instead, as 29 C.F.R. § 541.106(a) provides, that even if the concept of concurrent duties is at play, an employee's primary duty still must be management looking at all of the factors in §541.100 and 541.700. If AutoZone is relying on the concurrent duty provision to justify its classification of Store Managers as exempt in the early 2000s', it has provided no evidence of what specific factors it looked at to arrive at that decision.

35.    AutoZone also seeks to rely on the *Cofield v. AutoZone Stores, Inc.,* 2:02-2436-RDP, to justify its classification decision.  *See* Doc. 539-9 ¶6. Cofield involved a single Assistant Manager, not a class of Store Managers. *Id.* The time period at issue in *Cofield* only covered October 3, 1999 through September 10, 2000. Doc. 336-46 p.3, n3.

36.    The *Anthony Smith v. AutoZone* case in the Eastern District of Virginia is also not dispositive of this issue despite what Defendants argue. *Smith* involved an individual

---

[4]As noted in Plaintiffs' summary judgment responses, merely being held responsible for for supervising employees or running the store does not mean that an employee performs their managerial duties concurrently with non-managerial duties all of the time.  *See Morgan* at 1272-73; *Hood v. JeJe Enterprises, Inc.,* 207 F.Supp.3d 1363, 1377-1378 (N.D. Ga. Sept. 12, 2016); *Sorton v. Eidolon Analytic, Inc.,* 2017 U.S. Dist. LEXIS 4004, *11 (M.D. Fla. January 11, 2017); *Scheffer,* 2012 U.S. Dist. LEXIS 200478, *10.

Plaintiff.  Doc. 536-7.

37.    There is no indication from the *Smith* opinion that the same extent of corporate policies and procedures were reviewed, that are at issue in this case.  Doc. 536-7.

38.    Moreover, as the *Smith* opinion itself states "FLSA exemption claims are necessarily fact-specific, and Smith has offered no evidence that the facts of <u>Taylor</u> mirror those in his case."  Doc. 536-7 p.18, n.7.

39.    While Alison Smith states that the Department of Labor has never found that the company's Store Manager position was improperly classified, there is no evidence that the Department of Labor has ever investigated or found that the position was properly classified.  *See* Doc. 536-9.

40.    Smith was not designated as a corporate representative and was not even disclosed as a potential witness until after discovery had closed.  PX 13, 14 & 17.  Her testimony that AutoZone consulted with outside counsel from various firms from time-to-time regarding the exempt status of the Store Manager position is different from the testimony of the witnesses who were designated as corporate representatives and who were disclosed on the company's initial disclosures during the discovery period.  *Compare* Doc. 536-9 ¶ 7 with Pl. Facts 14-29.  Plaintiff did not have the opportunity to depose Smith since she was not listed as a witness.

## III.  ARGUMENT

The statute of limitations for a claim seeking unpaid overtime wages under the FLSA is generally two years. 29 U.S.C. § 255(a). But if the claim is one "arising out of

a willful violation," the statute of limitations is extended to three years. *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1280 (11th Cir. 2008). "To establish that the violation of the FLSA was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162-63 (11th Cir. 2008) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 1681 (1988)). Federal regulations define "reckless disregard" as the "'failure to make adequate inquiry into whether conduct is in compliance with the FLSA.'" *Id.* at 1163 (quoting 5 C.F.R. § 551.104).

## A.   Willfulness

The Eleventh Circuit considers willfulness under the FLSA to be a jury question. *See Morgan* at 1282 quoting *Alvarez-Perez* at 1162 ("[T]he judge and jury answer what is essentially the same question for two different purposes.  The willfulness or good faith question is answered first by the jury to determine the period of limitations and then, if there is a verdict for the employee, again by the judge to determine whether to award liquidated damages"; *See also* Eleventh Cir. Pattern Jury Instruction 4.14, Annotations and Comments § II.B.  Some of the factors courts in this circuit have looked at determine whether a FLSA violation was willful include, (1) what efforts has the company made to determine if managers were properly classified as exempt executives; (2) what role

company decisions, policies, practices, and procedures played in the misclassification; and (3) whether legal counsel's opinion regarding classification was in writing and how much information is available regarding counsel's opinion.  *See Morgan* at 1280-83; *Alvarez* at 1167-68; *Mumby v. Pure Energy Servs. United States, Inc.,* 2009 U.S. Dist. LEXIS 142316, *10-13.  Based on these factors, Defendant's motion is due to be denied.

Defendant argues that it is entitled to summary judgment based on the two-year statute of limitations for 705 individuals, because Plaintiffs cannot show that any violation by Defendant was willful.  As an initial matter, this motion is premature since a determination of willfulness is typically made by a jury after a finding of liability. Defendant argues that it is due summary judgment on this issue because (1) relevant case law supports its classification decision; (2) because it consulted with outside counsel to determine if its classification was proper; and (3) it internally reviewed the position to see if it was properly classified.   As will be shown below, the evidence and law do not support their contention that summary judgment should be granted on this issue.

### 1.   Courts Have Held That Store Managers Were Misclassified as Executives Based on Similar Facts.

The Eleventh Circuit, in a published decision, has upheld a jury verdict that retail store managers who do not have discretion to hire or fire, who are controlled by extensive corporate policies and procedures, and who spend an overwhelming majority of their time performing non-managerial duties are mis-classified as exempt employees.  *Morgan*, *supra.*  In *Taylor v. AutoZone*, the Ninth Circuit Court of Appeals ruled that summary judgment was inappropriate in a collective action involving the very same AutoZone store

managers who have brought this case.  572 Fed. Appx 515 (9th Cir. 2014); *See also,*

*Rodriguez v. Farm Stores Grocery, Inc.,* 518 F.3d 1259, 1264-65 (11th Cir. 2008); *Knott*

*v. Dollar Tree Stores, Inc.,* 2010 U.S. Dist. LEXIS 147314, *12 (N.D. Ala. May 24,

2010)(Coogler, J.); *Mobley v. Shoe Show, Inc.,* 2018 U.S. Dist. LEXIS 213662, *13-

14,26 (S.D. Ga. Sept. 24, 2018)(Wood, J.).  Multiple other courts have found that

summary judgment was inappropriate in retail manager exemption cases.[5]

Defendant's attempted reliance on *Smith v. AutoZone* and *Cofield v. AutoZone*

does not require a grant of summary judgment here.  Instead, as quoted in Defendant's

brief, "courts 'cannot assume' that facts from an earlier FLSA action are identical to those

in later actions, even where a later case involves the same employer and similarly-situated

plaintiff-employees."  Doc. 535 p.13 n.8 (citing *Smith,* 2016 WL 4718184 at *16, n.7; *In*

*re Family Dollar Litigation,* 637 F.3d 508, 512 (4th Cir. 2011).  Instead, courts must do

---

[5] *See Barreto v. Davie Marketplace*, Ltd. Liab. Co., 331 F. App'x 672 (11th Cir. 2009) (vacated the entry of summary judgment finding that summary judgment based on the executive exemption is appropriate only where the four prongs of the executive exemption test are met as a matter of law; it is not appropriate disposition where there remain issues of fact regarding three of the four elements); *Rodriguez v. Farm Stores Grocery, Inc.,* 518 F.3d 1259, 1264 (11th Cir. 2008) (declining to set aside a jury verdict against an employer on the executive exemption affirmative defense where there was evidence from which a jury could conclude that the exemption did not apply to store managers of Family Dollar stores); *Hood v. JeJe Enters., Inc.,* 207 F. Supp. 3d 1363 (N.D. Ga. 2016) (denied motion for summary judgment finding that a genuine question of material fact exits regarding whether plaintiff's primary duty was management, it is not necessary for the Court to reach the other factors of the executive exemption test at this time); *Knight v. Beall's Outlet Stores, Inc.,* No. CV 215-166, 2017 U.S. Dist. LEXIS 5491, at *12 (S.D. Ga. Jan. 13, 2017) (denied summary judgment finding that the record did not reflect that Plaintiff was "plainly and unmistakably" exempt from the FLSA under the executive exemption); *Scheffer v. Int'l Paper Co.,* No. 1:11-CV-00406-AT, 2012 U.S. Dist. LEXIS 200478, at *27 (N.D. Ga. Sep. 7, 2012) (denied summary judgment finding that there was at least a factual question as to whether Plaintiff's non-managerial duties were comparatively more important than his non-managerial duties such that a reasonable jury could conclude that management was not his primary duty); *Warner v. Walgreen Co.,* No. 9:14-CV-81176-ROSENBERG/BRAN, 2015 U.S. Dist. LEXIS 63316, at *15 (S.D. Fla. May 14, 2015) (holding that there are questions of material fact as to whether plaintiff's primary duty was management, and therefore, denied summary judgment as to executive exemption); *Bond v. Ripa & Assocs., LLC,* No. 8:08-cv-2056-T-33EAJ, 2010 U.S. Dist. LEXIS 9655, at *9 (M.D. Fla. Feb. 4, 2010) (finding that a reasonable factfinder could find that Plaintiff's managerial tasks did not constitute his primary duties under the balancing test set forth in the regulations of the FLSA, thus, creating a genuine issue of material fact).

an analysis based on the facts in the case before them, and employers must perform an analysis based on the facts before them.  *See Smith, supra; Morgan* at 1280-81.

Smith involved the claim of one individual plaintiff in Virginia.  It was filed in a different circuit, involved different evidence, and the plaintiff was not part of this case. Importantly, the *Smith* case contains less evidence of corporate control than has been submitted in this case. *See* Doc. 336-47,pp.3-7.  *Smith* has no precedential or *res judicata* effect on this case and is not conclusive evidence that AutoZone did not wilfully violate the FLSA, especially given the *Taylor* opinion which was based on a much more extensive record, covering stores across the country.  *Compare Smith* with *Taylor.*

*Cofield* is even more irrelevant to the issue of willfulness in this case. The plaintiff in *Cofield* was an Assistant Manager, not a Store Manager.  *See Cofield,* Doc. 336-47. Cofield's claims only covered a time period from October 3, 1999 to September 10, 2000. Doc. 336-46 p.2.  This time period is well before the time period covered by the claims of any Plaintiffs in this case.  This time frame also covers a period of time prior to the amendment of the FLSA executive exemption regulations in 2004.  The *Cofield* case was not appealed to the Eleventh Circuit Court of Appeals and was decided prior to the Eleventh Circuit's *Rodriguez* and *Morgan* opinions.  *See* PX 18 - *Cofield* Docket. Moreover, regardless of the ruling in *Cofield*, AutoZone still changed the Assistant Manager position classification to a non-exempt, hourly paid position.  *See Alison Smith Declaration* Doc. 536-9 p. 2 ¶ 6.  None of these facts supports AutoZone's contention that summary judgment must be granted on the classification of Store Managers in this case

was not a willful violation of the FLSA.

AutoZone also relies on the evidence from an alleged "expert witness," Randy O'Neal, that the Store Manager position is properly classified, therefore, even if they have misclassified the position, this "expert report" is further evidence that it was not a willful violation.  Doc. 535 p.11.  First, O'Neal is a paid expert, hired by the company to give a favorable opinion in this case.  Second, O'Neal's opinion was made in October 2018, while AutoZone Store Managers have been classified as exempt since before 2000, and the opinion was not used in making the initial classification decision or in any review of the decision.  Finally, the court should not consider O'Neal's opinion in this matter because he is testifying as an expert witness as to the ultimate issue to be determined by a jury.[6]  *See e.g., Bachmann v. Hartford Ins. Co.,* 323 F.Supp.3d 1356,1361 (M.D. Fla. Aug. 28, 2018)(citing *Montgomery v. Aetna Cas. & Sur., Co.,* 898 F.3d 1537, 1541 (11th Cir. 1990)).

### 2.    Defendant's Evidence of Consultation with Outside Counsel Falls Well Short of What is Required to Gain Summary Judgment

AutoZone makes reference to consultations with counsel to determine the appropriate classification for Store Managers.  As an initial matter, consultation with outside counsel does not automatically preclude a finding of willfulness.

*See Mumby v. Pure Energy Servs*. U.S. Dist. LEXIS 142316 (holding that without more than the proposition that seeking out an attorney is, by itself, proof of reasonableness fails

---

[6]At the appropriate time, Plaintiff's intend to file a *Daubert* motion regarding Defendant's expert witnesses.

to satisfy defendants' burden of proving they acted reasonably and in good faith); *Fuentes v. CAI Int'l*, 728 F. Supp. 2d 1347 (holding that defendants' were not entitled to partial summary judgment on the "good faith" defense because there were disputed factual issues with regard to the advice from counsel and it was a jury question on the issue of willfulness); *Rakip v. Paradise Awnings Corp.*, No. 10-20004-CIV, 2010 U.S. Dist. LEXIS 117193, 2010 WL 4553675, at *7 (S.D. Fla. Nov. 3, 2010) (denying summary judgment on the defense of good faith reliance on the advice of counsel, finding a declaration "that simply states that Paradise Awnings received legal advice about whether it was properly paying the plaintiffs, and that the advice was that the plaintiffs were exempt from the FLSA," insufficient (alterations added)); *Powell v. Carey Int'l, Inc.*, 483 F. Supp. 2d 1168 (S.D. Fla. 2007) (denying summary judgment on issue of willfulness due to fact question regarding evidence of employer's reliance on advice of counsel). *Uffelman v. Lone Star Steel Co.*, 863 F.2d 404, 409 (5th Cir. 1989); *Townley v. Floyd & Beasley Transfer Co.*, 1989 WL 205342 * 4 (N.D. Ala. 1989) (finding that casually seeking and obtaining the advice of counsel is not . . . enough always to avoid a finding that a violation of the FLSA is 'willful.'"). For example, in *Fuentes,* the Court denied summary judgment because "[d]isputed fact questions exist[ed] as to what advice was sought, what disclosures were made by the defendants to their counsel, whether legal advice was reasonable, and whether the defendants strictly complied with the legal advice." 728 F.Supp.2d at 1359.

16

Likewise, in the instant case summary judgment is due to be denied. AutoZone provides scant details as to what counsel information counsel was given and actually reviewed and there is little information regarding exactly what the opinions of counsel were. *See* Allison Smith Decl ¶ 5. The most specific information given, is that counsel recommended changing California Store Managers to non-exempt in the early 2000s, but leaving other Store Managers as exempt. Alison Smith, former in-house counsel, explains that this was based on the FLSA's concurrent duties principle which she says "permits an employer to designate a position as exempt regardless of the amount of non-exempt tasks or duties performed so long as the employee continues managing and/or supervising while performing non-exempt work." Doc. 536-9 pp. 2-3 ¶ 5. Smith's version of concurrent duties is not the law and is particularly inconsistent with pre-2004 authority regarding concurrent duties.[7]

AutoZone has not shown any particulars regarding the specifics of any advice sought and received. There is no indication from the record as to what information was given to the attorneys, what information the attorneys considered, what the discussions were between the attorneys and AutoZone, and what exactly were the discussions with and recommendations from the attorneys. AutoZone's evidence merely indicates that their outside counsel informed them that it was appropriate to classify Store Managers as exempt. *See Smith Dec.* Doc. 536-9 ¶¶ 5-7.

---

[7]This particular review referenced by Smith took place in 2000 or 2001, so the post-2004 concurrent duties regulations could not have been a factor in this decision. PX 15, pp. 23:17-26:1.

According to Smith's testimony, the concurrent duties concept of the FLSA formed the basis for the difference in treatment between California and non-California managers. Doc. 536-9 ¶ 5.   However,  Smith's testimony does not comport with either the pre or post-2004 regulations describing concurrent duties and the executive exemption, which provides concurrent performance of exempt and non-exempt duties does not prohibit exempt classification as long as the employees primary duty is management . Thus, the analysis is not quite as simple as Smith suggests.[8]   Smith's testimony provides no indication as to what went into the analysis by AutoZone's outside legal counsel to provide this opinion or if a primary duty analysis was performed at all.   Therefore, questions remain as to the validity of reliance on this opinion which prevent summary judgment.

AutoZone also relies on an alleged review of the Assistant Manager position related to a lawsuit filed in 2002 in the Cofield case.  Doc. 536-9 ¶6.  According to Smith, as a result of this review, the Assistant Manager position was changed to non-exempt, even though the company had a ruling granting summary judgment for one Assistant Manager on the executive exemption issue.  *Id.*  There is absolutely nothing in Smith's declaration

---

[8]AutoZone's attempted use of concurrent duties is based on a faulty premise.  Contrary to AutoZone's position, merely retaining responsibility for supervising employees or running the store does not mean that an employee performs their managerial duties concurrently with non-managerial duties all of the time.  *See Morgan* at 1272-73; *Hood v. JeJe Enterprises, Inc.,* 207 F.Supp.3d 1363, 1377-1378 (N.D. Ga. Sept. 12, 2016); *Sorton v. Eidolon Analytic, Inc.,* 2017 U.S. Dist. LEXIS 4004, *11 (M.D. Fla. January 11, 2017); *Scheffer,* 2012 U.S. Dist. LEXIS 200478, *10.

that the Store Manager position was reviewed at that time or if counsel made any recommendations regarding the Store Manager position. *Id.*

Finally, Smith states that after those 2 opinions and until her employment ended in 2015, AutoZone "continued to consult with outside counsel with various firms from time-to-time regarding the exempt status of its job positions, including the Store Manager position." Doc. 536-9 ¶7. According to Smith, based on her knowledge, AutoZone "never received an opinion from outside counsel that the Store Manager position should be classified as non-exempt" except in California or Puerto Rico. *Id.* Smith provides no other information about these reviews, discussions or recommendations. *Id.* She does not provide the names of the lawyers, who contacted them, what they were asked to do, what they were given, what they reviewed, and what the results of any review were. Moreover, this testimony is different than the testimony given by corporate representatives Barber and Stephens. *See* Pl. Fact 40.

The cases relied on by AutoZone require more than just a mere statement that outside counsel was contacted and provided cover for the classification through a generic approval of the classification. For example, in *Nerland v. Caribou Coffee, Inc.,* while advice of counsel was one of the basis for the court's grant of summary judgment in favor of the employer's willfulness argument, the employer provided more evidence than just the passing statement of a corporate employee. 2007 U.S. Dist. LEXIS 32485 (D. Minn.

April 19, 2007); *See* PX 19 *Caribou Coffee* Doc. 537-20 - Opinion Letters from Outside

Counsel which was considered by the Court in evaluating summary judgment.[9]

In the instant case, AutoZone has provided nothing like these Defendants in

support of its summary judgment on willfulness.  First, unlike the Defendants in the cases

it cites, the only two specific instances where AutoZone contacted an attorney about

classification issues were both in connection with ongoing litigation in which they were

involved.  Second, in each of those cases much more specific information was given by

the Defendants as to what the attorney was asked to do, what the attorney reviewed and

what was the actual recommendation or opinion of the attorney.  AutoZone provides none

of this, but instead expects this Court to give it a pass by merely stating that they asked

an attorney who represented them in a lawsuit and were told they were ok.  Doc. 536-9

¶¶ 5-7.  That is not sufficient evidence to merit a grant of summary judgment, especially

in the face of evidence showing that the company only did a cursory review at best in

---

[9] *See also Halferty v. Pulse Drug Co.,* 826 F.2d 2, 3-4 (5th Cir. 1987)(granting summary judgment on wilfulness where Defendant provided some specifics as to the basis of its attorneys' opinion and recommendation and the company's reliance.); *Garcia v. Allsup's Convenience Stores, Inc.,* 167 F.Supp.2d 1308, 1316 (D. N.M. 2001)(employer provided evidence that it had engaged a lawyer and a DOL expert specifically for use in conjunction with implementing its method of paying employees to ensure that the method was in line with the requirements of the FLSA); *Redmon v. Chains, Inc.,* 996 P.2d 759, 763 (Colo. App. 2000)(employer provided evidence that it had became aware of an opinion regarding the employment status of dancers and gave the opinion to its attorney and asked him to perform an analysis of its relationship with its dancers to determine whether or not they were employees and the attorney then made specific findings and relayed those to the employer).

looking at the proper classification of its managers.[10]   *See Mumby, Fuentes, Rakip,*

*Powell, Uffleman, and Townley supra.*

### 3. AutoZone's Alleged Reviews of the Store Manager Position Were Cursory At Best and were Designed to Arrive at the Conclusion That Store Managers Were Exempt.

Contrary to AutoZone's position, the company has never performed an extensive

review of the Store Manager position to determine if it was properly classified.   In

response to Plaintiffs' 30(b)(6) notice, AutoZone proffered the testimony of Dan Barber

and Nancy Stephens related to AutoZone's efforts to determine if Store Managers were

properly classified.   They did not designate Alison Smith or anyone else from the legal

department and never sought to amend their 30(b)(6) testimony to include input from

anyone else.[11]

While Dan Barber, Director of Compensation, testified that he performed some

review in the early 2000's, the review was extremely limited and did not focus on the

actual experience of Store Managers.   Instead, Barber limited his focus to corporate-level

employees and 2 visits in the Memphis area over a 2 day period and he did not even

interview or talk with the stores' management regarding the exemption.   There was no

---

[10]Smith also testifies that to her knowledge, the DOL had never issued an opinion finding that AutoZone Store Managers were misclassified. Doc. 536-9 ¶ 8.  Of course, Smith never provides evidence that the DOL has ever even looked to determine if AutoZone had properly classified Store managers as exempt so this statement is meaningless. *Id.*

[11]Similar to the witnesses AutoZone used in its efforts to oppose conditional certification, the company did not list Alison Smith as a person with knowledge of anything on its Initial Disclosures until after the discovery deadline in this case.  Plaintiff did not have the opportunity to depose Smith.

company-wide survey or study to actually gain an understanding of the everyday job duties and experience of an AutoZone Store Manager throughout the company.

Additionally, Barber did not focus on the issues relevant to the primary duty inquiry. He testified that he never looked at the amount of time managers spent performing specific tasks and did not look at the amount of time Store Managers spent performing non-managerial versus managerial tasks. He did not look at the affect of the company's policies and procedures related to scheduling and corrective actions, and did not look at the specific details of how District Managers monitor the stores. He also did not review the relationship between the pay of Store Managers and the pay of other employees in the store. As corporate representative, he testified he was unaware of the company performing an analysis on any of the above factors.

After this early 2000's review, the company made no other attempt to review the Store Manager position until 2016, even though the FLSA regulations changed in 2004, the company's policies and procedures changed, including a dramatic change to the scheduling policy, and the 9th Circuit Court of Appeals reversed a grant of summary judgment on the company's store manager exemption in a FLSA collective action. In 2016, prompted by a proposed change to the FLSA's salary requirements, the company did undertake an analysis of the salary levels of Store Managers, but looked at nothing else.

Nancy Stephens' testimony was similar.  She knew of no efforts to review the Store Manager exemption since 2000 or any study of the Store Manager actual duties.  She was not aware of any studies or analyses performed to determine the amount of time Store Managers spent performing specific duties or performing managerial versus non-managerial duties.  Stephens was not aware of any study or analysis performed by anyone at the company related to the factors set forth in the FLSA or the corresponding regulations.  In other words, the testimony given by Stephens and Barber during the 30(b)(6) depositions is completely different from the picture now painted by AutoZone at summary judgment.  Such dramatically differing views should prevent the grant of summary judgment.

The Eleventh Circuit upheld a jury's finding of willfulness with similar evidence was presented at trial.  *Morgan* at 1280-81.  In *Morgan*, the Eleventh Circuit found that evidence that a company had never performed a company-wide study of the classification of Store Managers, but had made a one-time company-wide decision to classify all Store Managers as exempt was sufficient to support a finding of willfulness.  *Id.*  In addition, because of similar evidence the Eleventh Circuit held that it was reasonable for the jury to find that corporate executive knew that Store Managers spent a majority of time performing non-managerial duties, micro-management via corporate manuals, and close supervision by District Managers.  *Id.*  All of this evidence, which is extremely similar to the evidence in this case, is sufficient to support a jury finding of willfulness or at a

minimum to create a question of fact on that issue and therefore, summary judgment should not be granted.

## B.    EQUITABLE TOLLING

The statute of limitations should be extended for numerous individuals who were approved to receive notice of their rights to participate in this action by this Court, but who through no fault of their own were not actually sent the notice for several months. In the instant motion, Defendant seeks to bar the claim of anyone who did not file a consent in this case within 2 years of their last paycheck from AutoZone.  Plaintiffs have previously argued that there is sufficient evidence for a jury to determine whether Defendant's violation of the FLSA is willful, thereby extending the statute of limitations to 3 years.  In addition, even if the statute of limitations is not extended to 3 years because of willfulness, the statute of limitations for all of the plaintiffs subject to this motion should be equitably tolled and extended back to the point where the complaint was filed, or at the very least to the date where conditional certification was granted, September 14, 2016.[12]

The equitable tolling doctrine is applicable to claims brought under every federal statute, including those brought under the FLSA. *Holmberg v. Ambrecht*, 327 U.S. 392,

---

[12]Plaintiff is not seeking equitable tolling for the claim of Francisco Rodriguez who apparently never worked as a Store Manager for AutoZone.  Also, the first Plaintiff on Defendant's EX B - Michael Havelka has termination date of April 28, 2011, not April 8, 2001.  *See* EX 20 - Defendant's Chart of Allegedly Untimely Taylor Plaintiffs p.1.

397 (1946); *Antonio-Morales v. Bimbo's Best Produce, Inc.,* 2009 U.S. Dist. LEXIS 51833 (E.D. La. 2009). Typically, Courts have applied equitable tolling in situations where either (1) the defendant has actively misled the plaintiff; (2) if the plaintiff in some extraordinary way has been prevented from asserting his rights; and (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum. *Miller v. Beneficial Mgmt. Corp.,* 977 F.2d 834, 845 (3d Cir. 1992). Courts have held that equitable tolling is allowable 'where the employer's own acts or ommissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 309 (3d Cir. 1983). The employer's actions do not have to constitute an "egregious act of deception" for equitable tolling to apply. *Miller,* 977 F.2d at 845. For example, one Court has held that allegations that an employers assurances that overtime comepensation was being paid properly was sufficient to support equitable tolling to defeat summary judgment on statute of limitations grounds. *Henchy v. City of Abesecon,* 148 F.Supp.2d 435, 439 (D.N.J. 2001).

Importantly, Courts have granted equitable tolling in FLSA collective actions in order "to avoid prejudice to actual or potential opt-in plainitffs that can arise from the unique procedural posture of collective actions under 29 U.S.C. § 216(b)." *Antonio-Morales* at *4.[13]

---

[13] *See also, Partlow v. Jewish Orphans Home of S. Cal., Inc., 645 F.2d 757, 760-61 (9th Cir. 1981); Roussell v. Brinker Int'l,* No. H-05-3733, 2008 U.S. Dist. LEXIS 109663 (S.D. Tex. Nov. 4, 2008); *Stickle v. SCI Western Mkt. Support Ctr., L.P.,* 2008 U.S. Dist. LEXIS 83315, *61-62 (D. Ariz. Sept. 30, 2008); *Johnson v. Big Lots Stores, Inc.,* 604 F. Supp. 2d 903 (E.D. La. 2008);*Faison v. Texas EZPawn, L.P.,* 2007 U.S. Dist. LEXIS 36864, 2007 WL 1481047, at *1 (S.D. Tex. May 21, 2007); *Smith v. Heartland Automotive Servs., Inc.,* 404 F. Supp. 2d 1144, 1155 n.9 (D. Minn. 2005);*Owens v. Bethlehem Mines Corp.,* 630 F. Supp. 309, 312-13 (S.D. W.Va. 1986).

*Yahraes v. Rest. Assocs. Events Corp.*, 2011 U.S. Dist. LEXIS 23115 (E.D.N.Y. March 8, 2011), is especially instructive to the situation currently before the court.  In *Yahraes*, the plaintiffs argued that the drawn-out litigation history, including numerous delays, merited equitable tolling, especially where Plaintiffs had been diligent in pursuing claims on behalf of themselves and the putative collective class.  *Id.* at *5-6.  The *Yahraes* plaintiffs filed a motion for conditional certification less than a month after filing an amended complaint.  *Id.*  The due to a filing by Defendant, the case was stayed for approximately 160 days.  *Id.*  After the stay was lifted, Defendants sought to re-brief their opposition to certification and sought another stay until a not-yet filed motion to dismiss was decided.  *Id.*

The District Court granted the *Yahraes* plaintiffs' motion for conditional certification and ruled that equitable tolling applied, discussing the importance of Plaintiffs diligently pursuing these claims.  *Id.*  In applying equitable tolling, the Court noted that "a statute of limitations may be tolled as necessary to avoid inequitable circumstances."  *Id.*

In the instant case, a group of Plaintiffs (*Taylor* Plaintiffs) were opt-in plaintiffs in a collective action for several years in a district court in Arizona.  They were then notified, out of the blue, that their claims had been dismissed and that they would need to re-file.  A group of Plaintiffs took this step and re-filed the instant case within a month of dismissal on February 27, 2015.  Then on May 21, 2015, Plaintiff filed a full-blown motion for conditional certification, fully briefed and supported with evidence.  Defendant

immediately moved to stay briefing and to allow discovery, even though discovery is not necessary prior to ruling on conditional certification.   The Court granted the stay and the parties prepared and filed a proposed schedule for discovery.

After the parties conducted discovery, the Court then entered the scheduling order, adding additional time to complete discovery and for Plaintiffs to re-file for certification. Plaintiffs re-filed their motion for conditional certification on January 29, 2016. Defendant filed a response, then Plaintiffs filed a reply.  Briefing was closed as of April 4, 2016.  The court then granted Plaintiffs' motion for conditional certification on September 14, 2016, and ordered the parties to submit a joint proposed plan to facilitate notice by November 4, 2016.  The parties filed this proposed plan on November 4th. Since the form of notice had not yet been approved, and thus, could not be sent to the proposed class, the parties then requested a status conference on January 31, 2017.  The Court held a status conference on May 31, 2017, and then approved the proposed notice. Notice then was sent to the proposed class beginning in July 2017, and the putative class members had until October 4, 2017, to join.

Based on this fact pattern, putative class members were delayed in receiving notice of this action until approximately 2 and ½ years after the complaint was filed and over 2 years after the initial motion for conditional certification was filed in May 2015. Additionally, putative class members were not provided notice of this action until almost 10 months had passed after the court granted conditional certification and allowed notice to go out to the putative class.

Thus, like the *Yahraes* Plaintiffs, the instant Plaintiffs were delayed in receiving notice of this case through no fault of their own.  The Named Plaintiffs diligently filed this putative collective action to preserve their statute, and as their Complaint indicates, to preserve the statute of the entire putative class of Store Managers.  Plaintiffs then immediately filed to have the class certified in order to give Store Managers notice and the right to join.  The delays in this case were more than the ordinary delays associated with litigation and any delay in sending out the notice does not lay with Plaintiffs.  This situation, like the one in front of the *Yahraes* court merits the application of equitable tolling.

While Plaintiffs maintain that tolling is appropriate back to the filing of the complaint and at a minimum the date of the order granting conditional certification, there are also several other points throughout the litigation process which the Court could choose as the tolling date.  These include the initial filing for conditional certification, the second filing for conditional certification, and the date of the order granting conditional certification.  If the Court decides to apply equitable tolling and selects a corresponding date, Plaintiff suggests that the Court afford the parties an opportunity to work together and reach an agreement on which Plaintiffs are timely based on the application of the Court's ruling.

1.     **Taylor Plaintiffs**

The 138 *Taylor* Plaintiffs found in EX B to the Declaration of Laurie Sharitt, are due to have their statute of limitations equitably tolled.  Doc. 536-1 pp.25-28.  These Plaintiffs timely filed their opt-in forms in that case and then were mostly passive class members while the litigation played out in Arizona.  At all times they believed that they had done all they needed to pursue those claims.  Then, one day they receive notification that their claims were dismissed.  A few people found an attorney and re-filed that case on behalf of themselves and the other similarly situated managers.

Numerous *Taylor* plaintiffs who learned of this case prior to the granting of conditional certification joined this case.  *See e.g.,* Docs. 2,9,11,17 & 18.  The other *Taylor* Plaintiffs listed in Defendant's  EX B did not join until after receiving notice that another collective action had been filed and that they had the right to join.  This Court recognized the right of these *Taylor* Plaintiffs to join this case as reflected in the conditional certification order which specifically included them in the case even though many of their statue of limitations would have ran by the time certification was granted and  even more would have lost the rights to bring their claims by the time the notice plan was approved and the parties were allowed to send out notice.  Equitable tolling was made for this type of situation where inequities disadvantage one party and cause them to permanently lose their rights unless tolling is allowed.

### 2.   Non-Taylor Opt-Ins

The individuals listed in EX A to Sharitt's Declaration are opt-in Plaintiffs who were not part of the *Taylor* case.  However, similar to the *Taylor* Plaintiffs, their rights have been impacted by the delays in briefing and ruling on conditional certification and in sending out notice several months after conditional certification was granted.  Based on these facts and the cases cited above, equitable tolling should be applied and summary judgment should be denied as to the statute of limitations.

In addition to litigation delays, these non-*Taylor* Plaintiffs' statute of limitations should be tolled based on representations of their employer.  AutoZone always paid all Store Managers a salary and told them they were exempt employees who were not due overtime.  The company did not allow them to clock in and did not otherwise keep up with their hours.  The nuances of the FLSA's executive exemption are not something normally known to most non-legal people.  Once told by the company that they are not due overtime, it is reasonable that most managers would not know that their rights were being violated until an attorney or someone with legal knowledge told them.  Thus, under *Henchy* and *Miller*, these representations are sufficient basis to toll the statute of limitations for these plaintiffs until they received notice of the pending litigation and given an opportunity to join.  The Court should act accordingly and apply equitable tolling to the claims of these plaintiffs.

Respectfully submitted,

/s/ Rocco Calamusa, Jr.
Counsel for Plaintiffs
WIGGINS CHILDS PANTAZIS
    FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

CO-COUNSEL:
John A. Wilmer                          Mitchell K. Shelly
Walter A. Kelley                        James M. Coder
WILMER AND LEE, P.A.                     Alexander, Corder & Shelly, P.C.
100 Washington Street, Suite 100        215 S. Jefferson Street
Huntsville, Alabama 35801               Athens, AL 35611

<u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing has been served upon all counsel of record by e-filing with the Court's electronic filing system on this day, October 21, 2019.

K. Bryance Metheny
Michael L. Lucas
Amy K. Jordan
H. Carlton Hilson
Matthew T. Scully
BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203

/s/ Rocco Calamusa, Jr.
OF COUNSEL