FILED

2020 Apr-24  PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **HOPE M. CARR, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:15-cv-00356-AKK** |
| **AUTOZONER, LLC; AND** | ) | |
| **AUTOZONE STORES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, who work as store managers for AutoZone stores across the country, bring this class action against AutoZoner, LLC and AutoZone Stores, Inc. (collectively, "AutoZone") for alleged violations of the Fair Labor Standards Act, 29 U.S.C. *et seq.* The Plaintiffs seek to recover unpaid overtime compensation and other damages. This action is currently before the court on AutoZone's motions for summary judgment as to the claims of opt-in plaintiffs Jamaal Joseph, Lisa Minkosky, Daniel Urban, and Kevin Wood (collectively, the "Plaintiffs"). Docs. 321; 324; 327; 330. AutoZone argues the Plaintiffs are properly classified as exempt from the FLSA's overtime requirements under the executive and administrative exemptions. Docs. 322; 325; 328; 331. For the reasons discussed below, and

particularly because questions of fact exist regarding whether the Plaintiffs' primary duty is management, AutoZone's motions are due to be denied.

## I.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id*. at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  *See also Anderson*,

477 U.S. at 255.  Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

## II.

AutoZone operates thousands of stores across the United States that are organized into divisions, regions, districts, and individual stores.  Doc. 335-13 at 2.  Each AutoZone district includes seven to fifteen stores overseen by a district manager.  *Id.* at 3.  AutoZone stores vary widely in size, sales volume, and number of employees, but each store is managed by a store manager who reports to a district manager.  *Id.* at 3-6.  The store managers, such as the Plaintiffs, receive a salary and are the highest-level employees in each store.  *Id.* at 4-6.  As salaried employees, none of the Plaintiffs are paid overtime for any hours they work over forty hours per week.  Docs. 344-1 at 2; 244-2 at 2; 244-3 at 2; 344-4 at 2.

Jamaal Joseph has worked as an AutoZone store manager since 2013, and is in a district comprised of twelve stores in Montana, Wyoming, and South Dakota. Doc. 323-1 at 7-8, 75. Joseph works approximately sixty to sixty-five hours a week and currently supervises seven hourly employees. Docs. 323-1 at 9, 28; 344-3 at 4. Joseph contends he spends ninety percent of his time on customer service and sales, which are the same non-managerial duties performed by hourly employees. Docs. 323-1 at 31; 344-3 at 2.[1]

Lisa Minkosky has worked as an AutoZone store manager since 2008, and is in a district comprised of twelve stores in Indiana. Doc. 326-1 at 3, 29.[2] Minkosky supervises approximately thirty-seven hourly employees at a HUB store, including parts sales managers, a commercial sales manager, a commercial specialist, and an assistant manager. *Id.* at 9-10. According to Minkosky, she works fifty-five to sixty hours per week and spends eighty percent of her time on non-managerial tasks that hourly employees also perform. *Id.* at 30-31; Doc. 344-1 at 4-5.

Daniel Urban has worked as an AutoZone store manager since 1994. Docs. 329-2 at 2; 344-2 at 2.[3] Urban supervises approximately ten employees at his store,

---

[1] AutoZone admits that customer service and sales are non-managerial duties. *See* doc. 344-7 at 48-49.

[2] Minkosky spent one year as a District Manager in 2016. Doc. 326-1 at 7.

[3] The declaration the Plaintiffs submitted for Urban is unsigned, doc. 244-2 at 11, but AutoZone did not object to the declaration, *see* doc. 354.

including a parts sales manager.  Docs. 329-1 at 15; 329-2 at 2.  According to Urban, he works between fifty-five and sixty hours per week and spends eighty percent of his time performing non-managerial tasks that hourly employees also perform, such as sales, customer service, and cleaning.  Docs. 329-1 at 33; 344-2 at 4.

Kevin Wood has worked as an AutoZone store manager since 1996, and is in a district consisting of thirteen stores.  Doc. 332-1 at 7, 54.  Wood supervises approximately fourteen hourly employees, including parts sales managers, a commercial sales manager, and a commercial specialist.  *Id.* at 6, 10.  Wood alleges he generally works between fifty-five and sixty hours per week, and spends approximately eighty and ninety percent of his time performing non-managerial tasks.  Docs. 332-1 at 26; 344-4 at 4.

In spite of the differences between the Plaintiffs' stores, they each contend that AutoZone's policies make clear that sales and customer services are each manager's most important job duties.  Docs. 323-1 at 31; 344-3 at 2; 344-1 at 2; 344-2 at 2; 344-4 at 2.  Nevertheless, the Plaintiffs admit that they have responsibility for everything related to the store, including supervising employees and the store's overall performance even when they perform non-managerial duties.  Doc. 323-1 at 9, 13, 23-24, 28-29, 40; 326-1 at 9, 16, 28, 30; 329-1; 331-1.

## III.

The FLSA requires employers to pay overtime to employees who work more than forty hours a week, unless, relevant to this case, the employee is "employed in a bona fide executive, administrative, or professional capacity."   29 U.S.C. §§ 207(a), 213(a)(1).   An employee qualifies as an exempt executive if (1) she is compensated on a salary basis at a rate of at least $455 per week; (2) her primary duty is management; (3) she customarily and regularly directs the work of two or more other employees; and (4) she has authority to hire or fire other employees or her suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.   29 C.F.R. § 541.100(a) (2006) (effective to December 31, 2019).[4]   The employer bears the burden of establishing each of these factors.[5]

_____

[4] Unless otherwise noted, the court cites to the 2006 regulations that were in effect during the relevant time period.

[5] *See Williams v. Genex Services, LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (citing *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993)); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2003) (citation omitted).   Prior to 2018, courts construed FLSA exemptions narrowly, but "[b]ecause the FLSA gives no 'textual indication' that its exemptions should be construed narrowly," the Supreme Court held that courts "have no license to give the exemption[s] anything but a fair reading."   *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).   In light of *Encino*, AutoZone contends that "caselaw narrowly construing FLSA overtime exemptions . . . is no longer valid."   Docs. 322 at 13; 325 at 12; 328 at 13; 331 at 12-13.   But, this unsupported statement is only partially true.   Cases decided prior to *Encino* are invalid only to the extent a court narrowly construed an FLSA exemption, and *Encino* does not impact the validity of other aspects of the cases.   Or, as the Fifth Circuit put it in a post-*Encino* case, "the central analyses of [cases narrowly construing an FLSA exemption] remain unaffected because they concern the interpretation and application of FLSA-implementing regulations, not the statute

6

Here, the Plaintiffs contend that AutoZone cannot establish the exemption's second factor, i.e. that their primary duty is management.[6]  Docs. 345 at 23; 346 at 22; 347 at 23; 348 at 23.  Under the applicable regulations, "[t]he term 'primary duty' means the principal, main, major, or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  The primary-duty inquiry is "fact-intensive," *Rodriquez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir. 2008), and "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole," 29 C.F.R. § 541.700(a). The Eleventh Circuit has rejected a "categorical approach to the primary-duty inquiry," *Morgan*, 551 F.3d at 1269, and factors courts consider to determine whether an employee's primary duty is management[7] include "[1] the relative importance of the exempt

─────────────

itself."  *Amaya v. Norypi Movers, LLC*, 741 F. App'x 203, 205 n.2 (5th Cir. 2018) (citations omitted).

[6] The Plaintiffs also argue that AutoZone cannot establish the fourth factor, contending that they did not have authority to hire or fire employees.  Because the court finds a question of fact exists as to whether the Plaintiffs' primary duty was management, the court does not reach the issue of whether AutoZone established that the Plaintiffs had authority to interview, hire, or affect the status of employees and whether their recommendation are given particular weight.

[7] The regulations provide that "'management' includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the

duties as compared with other types of duties; [2] the amount of time spent performing exempt work; [3] the employee's relative freedom from direct supervision; and [4] the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). None of these factors are dispositive, and "a court must consider them collectively to determine if the employer has satisfied the primary duty requirement" for the executive exemption. *Smith v. AutoZone, Inc.*, 2016 WL 4718184, *7 (W.D. Va. May 13, 2016) (citing *Kreiner v. Dolgencorp, Inc.*, 841 F. Supp. 2d 897, 904 (D. Md. 2012)).

## A.

AutoZone does not seriously dispute that the Plaintiffs spend a majority of their time performing non-managerial tasks. Instead, AutoZone contends that the relative importance of the Plaintiffs' exempt duties shows that their primary duty is management because the Plaintiffs are "ultimately responsible for [their] store[s] at all times," and the stores could not operate if the Plaintiffs failed to perform their managerial tasks. Docs. 322 at 16; 325 at 15; 328 at 16; 331 at 15-16 (emphasis in originals omitted). To support that contention, AutoZone relies on the Plaintiffs' testimony admitting that they perform many managerial tasks, including

---

safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures." 29 C.F.R. § 541.102.

interviewing applicants, supervising and directing the work of employees, delegating work at their stores, and ensuring that store employees follow corporate policies and procedures.  Docs. 322 at 15-16; 325 at 14-15; 327 at 15-16; 331 at 15; *see also* docs. 323-1 at 20-21; 326-1 at 9, 16, 24, 28, 30; 329-1 at 25-26, 28-29; 332-1 at 12, 18, 29.  AutoZone further adds that the Plaintiffs are eligible for bonus compensation based on his or her store's performance, and that this weighs in favor of finding that the Plaintiffs' managerial duties are relatively more important than their non-exempt duties.[8]  Docs. 322 at 17; 325 at 16; 328 at 17; 331 at 16-17; *see also* docs. 323-1 at 11; 326-1 at 10-11; 329-1 at 13; 329-2 at 2; 332-1 at 7.

The Plaintiffs counter in multiple ways.  First, they present evidence that their primary duty at their respective stores is customer service and sales.  *See* docs. 345 at 4-6, 24; 246 at 4-6, 24; 347 at 4-6, 24; 348 at 4-5, 24.  In addition to their own testimony on this point, the Plaintiffs cite to AutoZone's Director of Field Human Resources' and the Regional HR Manager's for the Birmingham Region testimony that helping customers and selling products is the most important job for AutoZone's employees, and that AutoZone expects its store managers to follow corporate

---

[8] *See Smith*, 2016 WL 4718184, at * 8 (noting that the plaintiff's bonus was tied to his management duties before finding that the plaintiff's "managerial duties were relatively more important than his non-managerial duties").

customer service policies, such as "Drop-Stop/30/30,"[9] "GOTTChA,"[10] and "Go the Extra Mile."  Docs. 344-6 at 76; 344-7 at 17.  The Plaintiffs add that, in light of AutoZone's policies, one Regional HR Manager testified that "if a customer needs assistance, [store managers are] going to take care of the customer," doc. 344-8 at 37, and, in a declaration drafted by AutoZone,[11] Urban states that "AutoZone's culture requires that we take care of customers no matter what," doc. 329-2 at 2.  Moreover, the Plaintiffs argue that customer service and sales is so important to AutoZone that Joseph's District Manager requires him to "be out on the sales floor . . . as much as possible," and to complete all of his required paperwork at the sales counter.  Doc. 323-1 at 36.  And, the focus on customer service purportedly prevents the Plaintiffs from being able to delegate tasks to hourly employees.  *See* docs. 323-1 at 12, 28; 344-1 at 2-5; 344-2 at 3-4; 344-4 at 3-5.  Finally, as to customer service, the Plaintiffs claim that AutoZone's non-discretionary policies—Drop-Stop/30/30, GOTTChA, and Go the Extra Mile—mandate that store managers make customer service their top priority, prescribe the methods by which they provide customer

---

[9] Drop-stop/30/30 refers to AutoZone's policy that any employee who is at the front of the store is to drop or stop what they are doing to greet a customer before the customer gets thirty feet into the store, or has been in the store for thirty seconds.  *See* docs. 344-6 at 76; 344-10 at 3; 344-15 at 2.

[10] GOTTChA stands for "go out to the customer's automobile.  Doc. 344-1 at 4.

[11] AutoZone prepared the declaration in 2015 for use earlier in this case, *see* doc. 329-1 at 35, presumably before Urban opted in as a plaintiff, and Urban does not remember signing the declaration or discussing it with anyone from AutoZone, *id.* at 34-35.

service, and require them to stop whatever they are doing in the store to assist customers.  Docs. 344-1 at 3-4; 344-2 at 2-4; 344-3 at 2-4; 344-4 at 3-4.

Second, the Plaintiffs challenge the extent and level of their managerial duties. The Plaintiffs declare that they share most of their managerial duties, including scheduling, inventory, and compliance with policies, with hourly managers.  Docs. 323-1 at 30; 332-1 at 13, 15-16; 344-1 at 8-9; 344-2 at 7-8; 344-3 at 7-8; 344-4 at 6, 8.  And, according to the Plaintiffs, AutoZone considers an hourly assistant or sales manager as the manager in charge of a store for the days when the scheduling program assigns the hourly manager the task of opening or closing manager.  Docs. 344-1 at 8; 344-2 at 7; 344-3 at 7; 344-4 at 5, 7-8.  In addition, two of the Plaintiffs testified that the hourly employees at their stores require little supervision because they know what is expected of them and what to do based upon AutoZone's corporate policies.[12]  Docs. 329-1 at 21, 23; 332-1 at 13, 16.

The Plaintiffs further contend that AutoZone's corporate policies severely constrain their discretion with respect to scheduling, one of their primary managerial duties.  Docs. 344-1 at 6; 344-2 at 5; 344-3 at 5; 344-4 at 5.  The Plaintiffs note that they do not set the labor budget for their stores, and that AutoZone's automated

---

[12] This contention strikes the court as contradictory.  On the one hand, some of the Plaintiffs complain that they are so busy with non-managerial tasks that they have no time to supervise employees.  And yet here, the complaint is about having a subordinate that is so competent that the Plaintiffs claim he or she does not need any supervision from the Plaintiffs.

scheduling system assigns daily tasks for completion at its stores and prescribes the amount of time allocated to the tasks and the employee to perform each task, which the Plaintiffs claim show they have little discretion to determine when and how tasks are completed at their stores. *See* docs. 323-1 at 35; 329-1 at 18; 332-1 at 13; 344-1 at 7-8; 344-2 at 5-6; 344-3 at 5-6; 344-16; 344-17 at 2; 344-6 at 69-71; 344-7 at 30-31. The Plaintiffs also testified that their district managers further limit their discretion over scheduling because the district managers must review and approve store schedules, and can adjust the schedules before approving it and make changes after approval by directing the Plaintiffs to cut hours. Docs. 323-1 at 17; 329-1 at 19-20; 332-1 at 15; 344-2 at 5-6.

The Plaintiffs claim also that the district managers limit their discretion over other managerial tasks, including disciplining employees, performance reviews, resolving customer complaints, hiring, and ordering items for the stores. Docs. 323-1 at 15, 17-19, 22, 30-31, 34-35; 326-1 at 22, 31; 329-1 at 22-26, 29, 36; 332-1 at 18. According to the Plaintiffs, they must "run everything by" their district managers, who can alter the Plaintiffs' decisions regarding discipline and customer complaints, or simply tell the Plaintiffs how to handle those tasks. Docs. 323-1 at 10-11, 15, 17-19; 329-1 at 29; 332-1 at 18. For example, Urban testified that his district manager makes all decisions regarding employee discipline, and Urban just communicates the decision to the affected employee. Doc. 329-1 at 24.

Viewed in the light most favorable to the Plaintiffs, all of this evidence undermines the relative importance of the Plaintiffs' managerial duties to AutoZone. While AutoZone asserts that its stores could not operate day-to-day without a manager scheduling employees, ensuring policies are followed, and delegating work to the employees, *see* doc. 322 at 15-16, a jury weighing all the evidence may side with the Plaintiffs' claim that it is the district managers that have ultimate responsibility for scheduling and ensuring AutoZone's policies are followed, and that AutoZone's automated scheduling system generally delegates tasks to employees. In addition, based on the evidence that Plaintiffs often cannot accomplish their managerial tasks because AutoZone requires them to focus on sales and customer service, a jury may also accept the Plaintiffs' contention that sales and customer service are relatively more important to AutoZone than the Plaintiffs' managerial duties. Consequently, based on this record, the first factor weighs against a finding as a matter of law that the Plaintiffs' exempt duties were more important than their non-exempt duties.[13]

---

[13] *See Morgan*, 551 F.3d at 1270 (finding that "ample evidence supported a finding that the non-managerial tasks not only consumed 90% of a store manager's time but were of equal or greater importance to a store's functioning and success" based in part on evidence that each store had a limited payroll budget a large amount of non-managerial tasks to be performed); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 675 (11th Cir. 2009) (finding that a plaintiff's testimony that "he was required to perform non-exempt work for such a large percentage of his time that he had no time to . . . supervise other employees" and that "non-exempt employees did not require his supervision, as they already 'knew what the job was'" created a question of fact regarding whether the plaintiff's non-management duties were relatively more important than his few managerial duties).

**B.**

The second factor in the primary duty analysis is the amount of time an employee spends on exempt work.  This factor is "a useful guide in determining whether exempt work is the primary duty of an employee," but is not dispositive.  29 C.F.R. § 541.700(b).  Employees who spend less than "50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.*  In addition, "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.700 are otherwise met." *Id.* at § 541.106(a). "In other words, an employee's performance of nonexempt work does not preclude the exemption if the employee's primary duty remains management." *Morgan*, 551 F.3d at 1268.

The Plaintiffs testify that they work between fifty-five and sixty-five hours per week, and spend eighty to ninety percent of their time performing non-managerial duties such as sales, helping customers, cleaning, and stocking.  Docs. 323-1 at 24, 27, 31; 326-1 at 30-31; 329-1 at 31, 33; 332-1 at 17, 24, 26; 344-1 at 4; 344-2 at 4; 344-3 at 4; 344-4 at 4.  AutoZone generally concedes this point,[14] but notes that under the relevant regulations, retail executives may still qualify for the

---

[14] An AutoZone Regional HR Manager admits that AutoZone Store Managers spend more time on sales than the managerial duties of corrective actions, scheduling, and inventory management. *See* doc. 344-7 at 48.

exemption even if they do not spend a majority of their hours on exempt tasks. *See* docs. 322 at 17-18; 325 at 16-17; 328 at 17-18; 331 at 17-18. AutoZone contends also that the Plaintiffs perform their non-managerial tasks concurrently with their managerial duties, docs. 322 at 18-20; 325 at 18-19; 328 at 18-20; 331 at 18-20, citing in support of this contention the Plaintiffs' testimony that they remain accountable for their store's performance and supervising store employees at all times, *see id.*; *see also* docs. 323-1 at 9, 13, 23, 28, 36-37; 326-1 at 16, 30; 329-1 at 9, 31; 332-1 at 12, 24. But, the Plaintiffs declare that AutoZone's policies do not allow them to perform any other job duties when they are helping customers. Docs. 344-1 at 4-5; 344-2 at 3-4; 344-3 at 3-5; 344-4 at 3-5. And, relatedly, the Plaintiffs also assert that helping customers requires their full attention, *id.*, and one Plaintiff also testified that he works alone at his store from 7:30 a.m. until 10:00 a.m., during which time he performs the same work as hourly employees and is unable to supervise any other employees, doc. 323-1 at 29-30. In short, the Plaintiffs assert they cannot supervise employees while serving customers and making sales.

While the court is skeptical of these contentions,[15] the court's role at the summary judgment stage is not to weigh the evidence. Instead, the court must

---

[15] After all, no manager should want employees who are so dependent on supervision that they cannot perform their assigned tasks while the manager is tending to other matters, including helping customers. Moreover, effective supervision does not require constant oversight over one's subordinates. And, one can argue that effective multitasking includes telling a customer to wait briefly while the manager finds an employee to assist the customer or for the manager to attend to

construe the evidence in the light most favorable to the Plaintiffs. In that respect, based on this record, which includes the Plaintiffs' contentions that they lack the ability to, or are not permitted to multitask, AutoZone has not established that the Plaintiffs were performing exempt and non-exempt tasks concurrently over a prolonged or continual basis. Put simply, a question of fact exists on this issue,[16] and a reasonable jury may well find that the amount of time the Plaintiffs spend working on non-exempt duties weighs in favor of finding that their primary duty is not management.

## C.

Next, AutoZone contends that the Plaintiffs' relative freedom from supervision while managing his or her store on a daily basis shows that their primary duty is management. Docs. 322 at 21-22; 325 at 20-22; 328 at 21; 331 at 20-21. This factor in the primary duty analysis does not require that the employer show that a store manager is completely free from supervision. In fact, "[a] 'local store manager's job is no less managerial for FLSA purposes simply because she has an active district manager.'" *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496,

---

something else, including going elsewhere in the store to retrieve something for the customer or to offer direction to the employees.

[16] *See Hui Hood v. JeJe Enterprises, Inc.*, 207 F. Supp. 3d 1363, 1378 (N.D. Ga. 2016) (holding that an employer had not proved as a matter of law that a plaintiff performed her managerial and non-managerial duties concurrently when some of the plaintiff's non-managerial tasks, such as assisting customers, required her full attention, "rendering her unable to perform any other task concurrently").

506 (6th Cir. 2007) (quotation and alterations in original omitted).  In this case, AutoZone contends that the Plaintiffs have relative freedom from supervision because each of them is the highest-ranking employee in his or her store on a daily basis, and report to district managers who oversee eleven to twelve other stores. Allegedly, this set up leaves the Plaintiffs free to exercise wide discretion on numerous daily tasks.  Docs. 322 at 22-23; 325 at 20-21; 328 at 21-22; 331 at 20-21. And, AutoZone contends that the Plaintiffs admit they exercise discretion to make "numerous daily decisions regarding delegation, work, tasks, [and] product ordering . . . ."  Docs. 322 at 23; 325 at 22; 328 at 22-23; 331 at 22-23.

The Plaintiffs dispute AutoZone's characterization of their work environment, and contend that almost every managerial duty they perform is directed by detailed corporate policies[17] and constrained by their district managers' oversight.  Docs. 345 at 29; 346 at 28; 347 at 29; 348 at 29.  As mentioned above, the record reveals that the Plaintiffs' district managers must review and approve the Plaintiffs' decisions regarding scheduling, discipline, and hiring.  *See* Section III(A), *supra*.  And, the Plaintiffs present evidence that the district managers have ultimate responsibility for the store schedule and give the Plaintiffs direct instructions about how to handle

---

[17] The Plaintiffs present evidence that their discretion regarding their managerial tasks is constrained by corporate policies, which prescribe how tasks are assigned at stores, and how inventory at each store is set up and displayed.  Docs. 344-1 at 3-4, 6-8; 344-2 at 3-7; 344-3 at 3-6; 344-4 at 3-7.

issues and complete tasks at their stores.  Docs. 323-1 at 15, 17; 326-1 at 31; 329-1 at 19, 24, 36; 332-1 at 18; 344-1 at 11; 344-2 at 10; 344-3 at 10; 344-4 at 10. Relatedly, Joseph and Wood also testified that they generally communicate with their district managers multiple times a day, docs. 323-1 at 27, 33; 332-1 at 23; doc. 344-4 at 10, and presumably receive directions during each call.  That evidence indicates that the Plaintiffs' district managers may be more than just "active managers" who still allow the Plaintiffs relative freedom.  Rather, as the Plaintiffs characterize their work environment, the relationship is more akin to the Circuit's finding in *Morgan*, i.e., that AutoZone's "store managers have scant discretion to act independently of their district managers."  *Morgan*, 551 F.3d at 1251.

Viewed in the light most favorable to the Plaintiffs, the evidence shows that AutoZone's corporate policies and "close district manager oversight . . . left store managers little choice in how to manage their stores . . . ."  *Morgan*, 551 F.3d at 1271.  Thus, a jury could find that based on the Plaintiffs' limited discretion with respect to their managerial tasks, their relative freedom from supervision weighs in favor of finding that their primary duty is not management.

## D.

Finally, AutoZone contends that the Plaintiffs' earnings compared to other employees in their stores show that their primary duties are management.  Docs. 322 at 23-24; 325 at 22-23; 328 at 23-24; 331 at 23-24.  AutoZone presents evidence that

each Plaintiff is the highest-paid employee in his or her store, and the only store employee eligible for a bonus based on store performance.  Docs. 323-1 at 11; 326-1 at 10-11; 329-1 at 13; 332-1 at 7.[18]  But, AutoZone does not present any evidence regarding the Plaintiffs' hourly wages in comparison to alleged hours each Plaintiff claimed they worked, much less how the Plaintiffs' hourly wage compares to other employees in their stores.  *See* docs. 322; 325; 328; 331.  Thus, AutoZone's evidence is not sufficient to establish that the Plaintiffs' hourly wage was significantly different than other employees in their stores, and AutoZone has not shown that this factor weighs in favor of finding the Plaintiffs are exempt executives.[19]

In summary, viewing all of the evidence in the light most favorable to the Plaintiffs, the evidence shows that the Plaintiffs spent the vast majority of their time performing the same duties as hourly employees, and that they lacked discretion and freedom from supervision over their managerial tasks.  In light of that evidence, a reasonable jury could determine that the Plaintiffs' primary duty was not management, and a question of fact exists on this issue.[20]  As a result, AutoZone has

---

[18] The plaintiffs contend that hourly commercial sales managers are also eligible for bonuses.  *See* doc. 344-1 at 3.

[19] *See Morgan*, 551 F.3d at 1271 (comparing the store managers hourly wages to those of hourly assistant managers to determine if the relationship between the salaries weighs in favor of finding that the store manager are exempt executives).

[20] AutoZone contends that the well-reasoned decision by Judge Michael Urbanski in *Smith v. AutoZone, Inc.*, 2016 WL 4718184 (W.D. Va. May 13, 2016) compels a different result and a finding that the Plaintiffs' primary duty is management.  Docs. 322 at 4; 325 at 4; 328 at 4; 331 at

not established as a matter of law that the Plaintiffs are exempt executives under the FLSA.

## IV.

Based on the foregoing, questions of fact exist regarding whether Jamaal Joseph's, Lisa Minkosky's, Daniel Urban's, and Kevin Wood's primary duty was management, and, therefore, whether they qualify as exempt executive under the FLSA.[21] Consequently, AutoZone's motions for summary judgment as to the claims of these Plaintiffs, docs. 321; 324; 327; 330, are **DENIED**.

---

4; 352 at 2, 7-9.  The court disagrees because the record before Judge Urbanski is materially different from the record in this case.  First, in finding that Smith's managerial duties were relatively more important than his non-managerial duties, Judge Urbanski relied in large part on Smith's annual performance reviews, which focused on Smith's leadership and management skills. 2016 WL 4718184 at *8-9.  The Plaintiffs' performance reviews are not in the record in this case.  Next, there is no indication in *Smith* that Smith presented evidence that he was unable to perform his managerial duties simultaneously with his non-managerial duties.  *See id.* at *10.  Finally, in *Smith*, the court noted that "the undisputed facts show that Smith exercised discretion to make daily decisions about scheduling, employee supervision, customer relations, and inventory management." *Id.* at *11.  But, in this case, the Plaintiffs have produced evidence disputing their discretion to make decisions about scheduling, employee discipline, and customer relations.  *See* Sections III(A), (C), *supra*.  Thus, while this court may well reach a similar result if faced with the same record, the facts here are different than those in *Smith*.

[21] AutoZone contends also that the Plaintiffs are exempt from the FLSA's overtime requirements under the administrative exemption.  Docs. 322 at 27-28; 325 at 26-27; 328 at 26-28; 331 at 26-28.  To show that this exemption applies, AutoZone must establish that the Plaintiffs (1) earn a salary of more than $455 per week; (2) have a primary duty of "the performance of office or non-manual work directly related to management or general business operations of the employer or the employer's customers; and (3) "exercise discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).  As discussed above, however, questions of fact exist regarding whether the Plaintiffs' primary duty is management and whether the Plaintiffs exercise discretion and independent judgment with respect to matters of significance.  *See* Section III(A)-(D), *supra*.  Consequently, AutoZone has not shown that, as a matter of law, the Plaintiffs are exempt administrative employees.

**DONE** the 24th day of April, 2020.

_____

**ABDUL K. KALLON**

UNITED STATES DISTRICT JUDGE
